## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELI LILLY COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-00401-RGA |
| | ) | |
| STRIVE PHARMACY LLC d/b/a | ) | |
| STRIVE COMPOUNDING | ) | |
| PHARMACY | ) | |
| | ) | |
| Defendant. | ) | |

## OPENING BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Jeremy D. Anderson
BAKER & HOSTETLER LLP
1201 N. Market Street, Suite 1407
Wilmington, DE 19801
jdanderson@bakerlaw.com
T: (302) 658-5070

**ATTORNEYS FOR DEFENDANT STRIVE PHARMACY LLC D/B/A STRIVE COMPOUNDING PHARMACY**

Dated: May 28, 2025

# TABLE OF CONTENTS

SUMMARY OF THE ARGUMENT ................................................................... 1

NATURE AND STAGE OF THE PROCEEDING ......................................... 1

STATEMENT OF RELEVANT FACTS......................................................... 2

STANDARD OF REVIEW.............................................................................. 7

LEGAL ARGUMENT AND AUTHORITIES................................................. 8

I.   Strive's Sporadic Contacts with Delaware Residents Do Not Give Rise to

Long-Arm Jurisdiction. ........................................................................ 9

II.  Delaware Lacks Personal Jurisdiction Over Strive Under Any Theory......... 10

A.  Strive's Registration in Delaware Cannot Give Rise to General Jurisdiction

Over Strive................................................................................... 11

B.  Strive's Contacts with Delaware Are Too Weak to Give Rise to Specific

Jurisdiction or to Justify Exercising Jurisdiction Under Traditional Notions

of Fairplay and Substantial Justice. ........................................... 12

CONCLUSION............................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
    751 F.3d 796 (7th Cir. 2014) ................................................................ 17–18

*BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*,
    229 F.3d 254 (3d Cir. 2000) .................................................................. 19

*Fidrych v. Marriott Int'l, Inc.*,
    952 F.3d 124 (4th Cir. 2020) ................................................................ 13–15

*Gehling v. St. George's Sch. of Med., Ltd.*,
    773 F.2d 539 (3d Cir. 1985) .................................................................. 8

*Genuine Parts Co. v. Cepec*,
    137 A.3d 123 (Del. 2016) ...................................................................... 11

*Hasson v. FullStory, Inc.*,
    114 F.4th 181 (3d Cir. 2024) .........................................................*passim*

*Intel Corp. v. Silicon Storage Tech., Inc.*,
    20 F. Supp. 2d 690 (D. Del. 1998) ........................................................ 9–10

*Kabbaj v. Simpson*,
    No. 12-cv-1322, 2013 WL 2456108 (D. Del. June 6, 2013) ........................ 11

*Katz v. Apuzzo*,
    2019 WL 3219513 (D. Del. July 17, 2019) .............................................. 9

*Mallory v. Norfolk Southern Ry. Co.*,
    600 U.S. 122 (2023) ............................................................................. 11

*Mann v. GTCR Golder Rauner, LLC*,
    483 F. Supp. 2d 884 (D. Ariz. 2007) ...................................................... 20

*Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*,
    760 F.2d 312 (D.C. Cir. 1985) ............................................................... 20

*Parker v. Learn Skills Corp.*,
    530 F. Supp. 2d 661 (D. Del. 2008) ....................................................... 8

*Phunware, Inc. v. Excelmind Grp. Ltd.*,
    117 F. Supp. 3d 613 (D. Del. 2015) ....................................................... 8

*TH Agric. & Nutrition, LLC v. Ace Eur. Group Ltd.*,
    488 F.3d 1282 (10th Cir. 2007) ............................................................. 19

*Toys "R" Us, Inc. v. Step Two, S.A.*,
    318 F.3d 446 (3d Cir. 2003) .................................................................. 12

*Urvan v. AMMO, Inc.*,
    No. 2023-0470, 2024 WL 863688 (Del. Ch. Feb. 27, 2024) ....................... 11

**Statutes**

10 Del. C. § 3104(c) ..................................................................................... 8

**Secondary Authorities**

Webster's Third New International Dictionary 1687 (2002) ................................. 3

## SUMMARY OF THE ARGUMENT

Lilly's complaint should be dismissed or transferred to where it could and should have filed suit in the first instance—Arizona. Lilly concedes in its complaint that Strive is an Arizona company headquartered in Arizona. But despite raising nearly every conceivable theory of personal jurisdiction, the facts do not demonstrate that Strive has a significant connection with Delaware. While Lilly alleges Strive engaged in false or misleading advertising online in connection with sales of compounded tirzepatide, Lilly pleads nothing that connects those actions with Delaware. "Interactive" advertising online that is accessible to everyone and that allegedly concerns a product popular everywhere do not give rise to personal jurisdiction. Nothing in Lilly's complaint connects those general contacts with Delaware. Lilly pleads no facts, for example, showing that any Delaware provider or patient even saw an allegedly misleading statement about compounded tirzepatide *before* submitting or purchasing such a prescription from, Strive. Nor are there any pleaded facts showing that Strive's website and online marketing materials have the sort of connection with Delaware that gives rise to personal jurisdiction (e.g., that the site is available only in Delaware, that Strive somehow tailors its website and online marketing materials to Delaware providers or their patients, that Strive's compounded tirzepatide bears some special significance to Delaware, etc.). Strive's motion to dismiss for lack of personal jurisdiction should therefore be granted.

## NATURE AND STAGE OF THE PROCEEDING

Lilly sued Strive on April 1, 2025, asserting unfair competition claims under the Lanham Act and claims under Delaware law for alleged unfair or deceptive trade practices arising out of Strive's (lawful) marketing of its compounded medicines, which includes compounded tirzepatide. *See* D.I. 1 at 1–2. This is Strive's motion to dismiss for lack of personal jurisdiction, or, in the alternative, transfer.

## STATEMENT OF RELEVANT FACTS

Although Lilly sued Strive in Delaware, Lilly's complaint does not explain why. Lilly is neither a Delaware corporation nor based in Delaware. Lilly is an Indiana corporation based principally in Indiana. D.I. 1 ¶ 7. And if Lilly has specific ties to Delaware, it has not said what they are. *See* D.I. 1. In fact, despite raising claims under Delaware law, Lilly pleaded no facts showing that it competes with Strive for sales in Delaware or that its sales in Delaware have been adversely affected by Strive's purported actions. *See* D.I. 1 at 7–34.

Lilly does allege that Strive is a competitor. *E.g.,* D.I. 1 ¶ 69. But nothing in Lilly's complaint suggests that the parties' competition is based exclusively or even mostly in Delaware. Quite the contrary, Lilly admits—especially in its Lanham Act claim—that any competition between the parties occurs nationwide. D.I. 1 at 7–34.

Lilly's complaint also admits expressly and tacitly that Strive has no real presence in Delaware. As Lilly concedes, Strive is an Arizona company based in Arizona. D.I. 1 ¶ 8. Indeed, Strive's entire executive team is based in Arizona, which is where all decisions regarding the marketing of Strive's products are made and then implemented. Declaration of Nate Hill ("Hill Decl."), ¶ 9. None of Strive's members (as an LLC) are Delaware residents. *Id.* And since the date of its formation, Strive has never maintained a physical location in Delaware, owned any property in Delaware (real or personal), employed any Delaware residents, or maintained any bank accounts here. *Id.* ¶ 12.

From its headquarters in Arizona, Strive fulfills the purpose it was lawfully formed in 2017 to serve—compounding a variety of medications based on the prescription and instructions that medical providers submit to treat their patients. *Id.* ¶ 3–6. Although Lilly appears to resent it,[1] compounding "can serve an important

---

[1] See, for example, Lilly's discussion of the foreign nations that have banned compounded weight-loss drugs like those Strive *lawfully* sells, D.I. 1 ¶ 37, among other screeds against the entire compounding industry.

patient need."[2] "Compounding is generally a practice in which a licensed pharmacist, a licensed physician or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combines, mixes or alters ingredients of a drug to create a medication *tailored to the needs of an individual patient*."[3] In other words, "a *personalized* medication." *See* Webster's Third New Int'l Dictionary 1687 (2002) ("personalize: 3c: to direct or adjust to the individual").

As the FDA recognizes (and teaches the public), the "tailoring" or "personalization" that compounding provides is often necessary when—in the opinion of medical providers in hospitals, clinics, and other health care facilities—"an FDA-approved drug is not medically appropriate to treat [patients]."[4] Such instances may include where patients have allergies to, say, the dye within a medication, or where "an elderly patient or a child who cannot swallow a tablet or capsule and needs a medicine in a liquid dosage form."[5] These are hardly the only examples. Hill Decl., ¶ 3–6.

When medical professionals determine that their patients need tailored or personalized medicines, and then transmit a prescription for such medicines reflecting that judgment, Strive is ready to fill that need and help those patients. *Id.* ¶ 7–8. And lately many medical providers nationwide are submitting prescriptions to Strive for compounded versions of drugs associated with weight-management (among their other uses), *id.* ¶ 8, which include requests for compounded tirzepatide—the product at the center of the case. *See* D.I. 1 at 1–2. In fact, Strive has compounded

---

[2] FDA, *Compounding and the FDA: Questions and Answers*, https://tinyurl.com/fda-questions-and-answers (last visited May 19, 2025) (hereafter *Compounding and the FDA*).

[3] FDA, *Human Drug Compounding*, https://tinyurl.com/Human-Compounding (last visited May 19, 2025) (emphasis added) (hereafter "*Human Drug Compounding*").

[4] *Compounding and the FDA* (last visited May 19, 2025).

[5] *Id.*

nearly 20 variations of tirzepatide in the past two years for patients nationwide. Hill Decl., ¶ 8.

That said, Strive's compounded tirzepatide is not at issue here. As Lilly's complaint makes clear, this is not a products liability case. Quite the contrary. Lilly expressly concedes that neither Strive's compounded product nor Strive's "pharmaceutical practice" are at issue here. *See* D.I. 1 ¶ 77. Lilly's suit is instead limited to (lawful) statements Strive has made about its product and services (and the pharmaceutical industry) while marketing itself online. *E.g.*, D.I. 1 ¶ 77. But none of that advertising material, including the material shown in Lilly's complaint, has ever been aimed specifically at Delaware. Hill Decl. at ¶ 15–16.

When Strive advertises, it does so via the internet and mostly through its website and its social media accounts. Declaration of Zach Shurtleff ("Shurtleff Decl."), ¶ 3; *see also* D.I. 1 at 14–31. But Strive does not aim those online efforts at any particular state or market (whether Delaware or anywhere else), such as through area-specific search engine optimization or targeted online ads. Shurtleff Decl., ¶ 4–5. Strive also never tailored its website or any particular marketing materials to any particular state's providers or patients. *Id.*

Despite all that Lilly says about Strive's use of "personalized" on its website (which closely tracks the FDA's own description of compounding), Strive has not separately marketed compounded tirzepatide for any purpose in any specific location (including Delaware), much less marketed that product as "personalized." *Id.*, ¶ 9. When Strive has marketed or discussed medications as being "personalized," those references have alluded merely to Strive's general purpose as a compounding pharmacy or its compounded medications generally. *Id.*, ¶ 10. Indeed, that fact is evident on the face of Lilly's own complaint. *See* D.I. 1 at 14–18 (citing Strive's website but failing to show anything where Strive linked "personalized" specifically to

compounded tirzepatide and incorporating Strive's drug catalog listing more than 50 different compounded medicines).

Not even references to tailored "weight management treatments" (D.I. 1 at 17) are references to compounded tirzepatide specifically. To the contrary, Strive also sells several compounded versions of semaglutide, another popular "weight management" drug. *E.g.*, D.I. 1 at 18–19 (citing Strive's 2024 Drug Catalog); Shurtleff Decl., ¶ 10. And whatever statements Strive has made about "weight management treatments" on its website or elsewhere, Strive has not aimed any of them specifically at Delaware. Shurtleff Decl., ¶ 10.

Indeed, Strive's compounded tirzepatide product has no special connection to Delaware at all. Hill Decl. at ¶ 13–23. Nothing about Delaware makes it an especially fertile market for compounded tirzepatide, for example. *Id.* ¶ 17. Quite the contrary. In 2023, Strive shipped less than $2,000 worth of compounded tirzepatide to Delaware, which was less than .01% of all compounded tirzepatide that year (much less, in fact). *Id.* ¶ 13. And while sales of compounded tirzepatide have grown in Delaware since that year, sales of compounded tirzepatide have grown everywhere else and far more in other locations, in fact. *Id.* ¶ 14–16. Since 2023, Delaware has never occupied more than a 0.2% share of all compounded tirzepatide sales at Strive. *Id.* ¶ 13. Indeed, even Wyoming—the least populated state in the Union—has yielded more prescriptions for compounded tirzepatide than Delaware. *Id.* ¶ 14.

Strive's minimal sales of compounded tirzepatide in Delaware reflects Strive's overall approach to the market. Strive may avail itself of opportunities with Delaware providers who reach out to Strive but Strive does not target (and has not targeted) the Delaware market. Strive has never, for example, sent a sales representative to Delaware to market Strive's services (or for any other purpose), attended any trade shows or conferences in Delaware, or instructed any of its sales representatives to target or focus on providers in Delaware. *Id.* ¶ 20–21. In fact, any relationship Strive

has with the five Delaware clinics and providers mentioned in Lilly's complaint—Ianua Health, Seaside Wellness, Renew Body Wellness Center, Lavish Wellness & Aesthetic, and SlimPhoria (D.I. 1 at 3–5)—exists because those providers reached out to Strive in Arizona (through Strive's website). Hill Decl., ¶ 18–19. But Strive has no contracts with these Delaware providers or any other formal relationship with them. *Id.* ¶ 12.

Another channel through which Strive may receive prescriptions (including for compounded tirzepatide) is through various telehealth networks with which Strive is affiliated. *Id.* ¶ 22. But Strive's relationships with such networks are not based in Delaware. *Id.* And when deciding which networks to partner with, Strive has never based that decision on a particular network's presence in Delaware. *Id.* Neither has Strive ever tried to influence any of these networks to focus on or target Delaware. *Id.* ¶ 22–24. Strive has no say in the matter. *Id.* Moreover, although telehealth providers may be licensed in Delaware, that does not mean they are physically present here. *Id.* ¶ 23. In fact, it is exceedingly common for a telehealth provider to sit in one state and treat a patient in another state where the provider is also licensed. *Id.* A Pennsylvania-based telehealth provider licensed in Delaware may therefore write a prescription for Delaware patients (and vice versa), which the provider then submits to Strive. *See id.* But, in this context, Strive will not know where the provider or patient are located until after the provider submits the prescription. *Id.*

Strive's website does provide a means for patients to find a Strive-affiliated provider by location. D.I. 1 ¶ 11 ("lookup tool"). But that feature is not focused on Delaware or compounded tirzepatide; Strive provides it to everyone. Shurtleff Decl., ¶ 6. And any results that feature provides won't be limited to the user's state or locale. If, for example, Delaware residents who live north of Wilmington search by a local address, the tool will return results for all nearby providers, including those in Glen

6

Mills, Pennsylvania. *Id.*, ¶ 7. Moreover, no one may use that feature to search for providers by a particular compound. *Id.*, ¶ 8.

On its website, Strive also provides patients with a prescription refill feature. D.I. 1 at 3–5. That feature is available to every patient who has a valid refill prescription for a compounded medicine—*any* compounded medicine—and no matter the state in which they reside. Shurtleff Decl., ¶ 6. And while each refill-seeking patient may choose which Strive pharmacy they may want to fulfill their order, Strive's Arizona pharmacy, until very recently, fulfilled all Delaware orders—a fact evident from the Strive 2024 Drug Catalog Lilly incorporates and provides a link to in its complaint. *See* D.I. 1 at 18 n.36. But there is no Strive location within Delaware. *Id.* ¶ 12.

Against that backdrop, Lilly sued Strive in Delaware citing Strive's online marketing activities and "interactive" website as grounds for hauling Strive into court here (as well as Strive's registering an agent and selling product here). *E.g.*, D.I. 1 ¶¶ 9–15. But Lilly pleaded no facts showing that Strive expressly aimed its website and online marketing materials at Delaware or promoted them in Delaware; that any Delaware provider saw even one of Strive's allegedly misleading posts *before* submitting a prescription to Strive; or that Delaware patients ever viewed Strive's website or marketing materials *before* paying for the prescription their provider submitted. *See* D.I. 1 at 3–31. Nor are there any pleaded facts suggesting that Strive's website and online marketing materials are available only in Delaware, that Strive tailors its website and message to Delaware providers or their patients, or that Strive's compounded tirzepatide bears any special significance to Delaware. *See* D.I. 1 at 3–31.

## STANDARD OF REVIEW

Lilly bears the burden under Federal Rule of Civil Procedure 12(b)(2) "of establishing with reasonable particularity that sufficient minimum contacts have

occurred between the defendant and the forum state to support jurisdiction." *Parker v. Learn Skills Corp.*, 530 F. Supp. 2d 661, 670 (D. Del. 2008). Once a defendant challenges personal jurisdiction, the plaintiff may not "'rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss[.]'" *Id.* (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984)). The plaintiff must instead "establish jurisdictional facts through sworn affidavits or other competent evidence." *Id.* Mere allegations are insufficient (unless verified under oath). *Id.* And while dismissal is typically the remedy when personal jurisdiction is lacking, "a district court lacking personal jurisdiction can [also] transfer a case to a district in which the case could have been brought originally [under § 1406]." *Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 544 (3d Cir. 1985). Dismissal or transfer to Arizona is warranted here under these standards.

## LEGAL ARGUMENT AND AUTHORITIES

This Court is well familiar with Delaware's two-step process for deciding whether Delaware may assert personal jurisdiction over a defendant. *E.g.*, *Phunware, Inc. v. Excelmind Grp. Ltd.*, 117 F. Supp. 3d 613, 622 (D. Del. 2015) (explaining how a plaintiff must first show jurisdiction exists under Delaware's long-arm statute and then that exercising jurisdiction under the long-arm statute would not offend due-process). But given the allegations Lilly included *and conspicuously omitted* from its complaint, and the evidence Strive submitted in support of its motion, Lilly cannot make either showing. Delaware's long-arm statute does not extend to Strive's limited contacts. *See* 10 Del. C. § 3104(c). And even if it did, stretching the long-arm statute to cover Strive's conduct would violate due process under any theory of personal jurisdiction (whether under the Fifth or Fourteenth Amendments). *See, e.g.*, *Hasson v. FullStory, Inc.*, 114 F.4th 181, 186–88 (3d Cir. 2024). The Court should therefore dismiss or transfer this action.

## I.    Strive's Sporadic Contacts with Delaware Residents Do Not Give Rise to Long-Arm Jurisdiction.

Although Lilly's complaint does not identify its theory of long-arm jurisdiction, no category of long-arm jurisdiction fits this case. In relevant part,[6] the statute permits the exercise of personal jurisdiction over a nonresident who:

> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply service or things in this State;
>
> (3) Causes tortious injury in the State by an act or omission in this State;
>
> [or]
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.

10 Del. C. § 3104 (c)(1–4). None of these sections apply.

Section 3104(c)(1) applies only if a jurisdictionally relevant act occurred in Delaware. *E.g.*, *Intel Corp. v. Silicon Storage Tech., Inc.*, 20 F. Supp. 2d 690, 695 (D. Del. 1998). Acts are jurisdictionally relevant under section 3104(c)(1) only if the claim "has its origin in the asserted transaction." *Id.* (cleaned up). But, as shown further below, the only acts that allegedly occurred in Delaware were Strive's delivery of prescriptions to Delaware residents. D.I. 1 at 3–5. Those (de minimis) sales of compounded tirzepatide to Delaware patients are jurisdictionally irrelevant. Lilly's claims are rooted not in Strive's products. D.I. 1 ¶ 77. Lilly's claims are instead rooted Strive's advertisements (and statements made in those advertisements), which occurred only online and from Arizona. Shurtleff Decl., ¶ 2–3; Hill Decl., ¶ 10.

Strive's receiving and fulfilling prescriptions from outside Delaware underscore why section 3104(c)(2) is inapplicable. "Delaware courts have consistently

---

[6] Since Strive has no interest in any Delaware real estate, Hill Decl., ¶ 12, section 3104 (c)(5–6) cannot give rise to long-arm jurisdiction here.

found that contracts negotiated and performed outside of Delaware will not support personal jurisdiction." *Katz v. Apuzzo,* 2019 WL 3219513, at *4 (D. Del. July 17, 2019) (cleaned up). Such contracts must also give rise to the claims at issue. *Id.* Strive's actions in fulfilling prescriptions—the only conceivable contract relevant to section 3104(c)(2)—occurred in Arizona and do not give rise to Lilly's claims.

Although Lilly also ostensibly alleges section 3104(c)(3) as a basis for long-arm jurisdiction, neither Lilly's complaint nor the evidence in the record will permit such a conclusion. That section applies only when the defendant commits the tortious act giving rise to the claim in Delaware. *Intel*, 20 F. Supp. 2d at 698. But as shown further below, Strive has not committed any tortious act within Delaware. Even when advertising gives rise to the plaintiff's claim, the defendant's advertising on a national platform does not qualify as an act in Delaware. *Id.* at 698–99.

Finally, to establish long-arm jurisdiction under section 3140(c)(4), Lilly must plead and prove Strive has "continuous and systematic contacts with Delaware (as contemplated under § 3104(c)(4))[.]" *Phunware*, 117 F. Supp. 3d at 630. But meager contacts with Delaware like Strive's "can hardly be considered continuous and substantial." *Intel*, 20. F. Supp. 2d at 699. Lilly's complaint lacks any facts that would rise to such a level, and the evidence belies any such notion (as addressed below). The Court may therefore dismiss or transfer this action without even considering why Lilly's action violates Strive's due process rights.

## II.  Delaware Lacks Personal Jurisdiction Over Strive Under Any Theory.

Stretching Delaware's long-arm statute to extend to Strive's alleged conduct here would offend due process under any theory of personal jurisdiction. Personal jurisdiction comes in two main varieties: general and specific. *E.g.*, *Hasson*, 114 F.4th at 186. The former hinges on evidence of a defendant's "continuous and systematic contacts with the state, regardless of whether those activities are related to the particular cause of action." *Kabbaj v. Simpson*, C.A. No. 12-cv-1322, 2013 WL

2456108, at *4 (D. Del. June 6, 2013). The latter rests on whether the plaintiff's causes of action arise from or relate to the defendant's forum contacts, *id.*, a test that itself has different formulations. *E.g., Hasson*, 114 F.4th at 186–87. And although Lilly's complaint advances nearly every conceivable theory of personal jurisdiction, none of them have merit.

### A.    Strive's Registration in Delaware Cannot Give Rise to General Jurisdiction Over Strive.

There is no merit to Lilly's (ostensible) allegations that because "Strive is licensed to conduct business in the state of Delaware and has a registered agent in the state," D.I. 1 ¶ 10, Delaware may exercise *general* jurisdiction over Strive. Indeed, there are at least two insurmountable obstacles to Lilly's assertions.

The Delaware Supreme Court's decision in *Genuine Parts Co. v. Cepec*, 137 A.3d 123 (Del. 2016), is the first. There the court held that registering to do business in Delaware does not, without more, subject a business to general jurisdiction in Delaware. *Id.* at 148. And Delaware's legislature has done nothing to amend that statute in the decade since.

The second obstacle is *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122 (2023), which held that a defendant stipulates to general jurisdiction within a state by registering to do business there when the state's law *explicitly* provides that "qualification as a foreign corporation shall permit state courts to exercise general personal jurisdiction over a registered foreign corporation[.]" *Id.* at 134. And, on its face, Delaware's registration statute "does not refer explicitly to personal jurisdiction, much less [provide] consent to personal jurisdiction." 137 A.3d at 126; *see also Urvan*

11

*v. AMMO*, Inc., C.A. No. 2023-0470, 2024 WL 863688, at *15 (Del. Ch. Feb. 27, 2024) (holding *Genuine Parts* remains good law post-*Mallory*).[7]

Because Strive's registration cannot be viewed as Strive's submitting to Delaware's general jurisdiction, Lilly's assertion of general jurisdiction fails. There is no other conceivable basis. Strive's contacts with Delaware cannot be described as "continuous and systematic"—the kind needed to prove general jurisdiction. *E.g.*, *Mallory*, 600 U.S. at 137–38. To the contrary, Strive's general contacts with Delaware are limited and sporadic. Hill Decl., ¶ 12–15.

## B.    Strive's Contacts with Delaware Are Too Weak to Give Rise to Specific Jurisdiction or to Justify Exercising Jurisdiction Under Traditional Notions of Fairplay and Substantial Justice.

To sustain a finding of specific jurisdiction, "the Due Process Clause of the Fifth Amendment requires (1) that the defendant have constitutionally sufficient minimum contacts with the forum, and (2) that subjecting the defendant to the court's jurisdiction comports with traditional notions of fair play and substantial justice." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003) (cleaned up, citations omitted). The first requirement (minimum contacts) has two main tests: "(1) the 'traditional' test—also called the 'minimum contacts' or purposeful availment test, and (2) the 'effects' test." *Hasson*, 114 F.4th at 186 (citations omitted). And even if one of those tests is met, "jurisdiction exists only if its exercise comports with traditional notions of fair play and substantial justice, i.e., the defendant 'should

---

[7] Any argument that *Mallory* somehow abrogated *Genuine Parts*, and thus subjected Strive to Delaware's general jurisdiction, would itself give rise to serious constitutional issues. For starters, when Strive registered in Delaware in 2023, the registration was not a submission to general jurisdiction under *Genuine Parts*. Besides risking a due process violation (by changing the rules only after Strive registered), extending Delaware's registration statute that far would violate the dormant commerce clause and for all the reasons Justice Alito explained in his *Mallory* concurrence. That kind of registration-based jurisdiction law would "discriminate[] against out-of-state companies and impose[] a significant burden on interstate commerce by requiring a foreign corporation . . . to defend itself with reference to all transactions, including those with no forum connection," but without any "legitimate local interest." 600 U.S. at 161–63 (Alito, J. concurring).

reasonably anticipate being haled into court' in that forum. *Toys "R" Us*, 318 F.3d at 451 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Jurisdiction over Strive cannot be maintained under any of these tests.

**1. The record defeats any showing of purposeful availment or a strong relationship between Strive, Delaware, and Lilly's claims.**

To satisfy the traditional minimum contacts test, Lilly must show that Strive "purposefully avail[ed] itself of the privilege of conducting activities in [Delaware] *and* that [its] claims arise out of or relate to the defendant's contacts with the forum." *Hasson*, 114 F.4th at 193 (cleaned up, emphasis added). Lilly cannot make either showing here.

Lilly cannot show Strive purposely availed itself of Delaware with what little it provided in the complaint—Strive's sporadic sales to Delaware residents and general use of an interactive website and social media posts. *E.g.*, D.I. 1 at 3–5. As the record makes clear, Strive's social media posts and website, "while commercial and interactive, do not appear to have been designed or intended to reach customers in [Delaware]." *Toys "R" Us*, 318 F.3d at 454. And Strive simply lacks any other contacts or presence within Delaware that would justify finding purposeful availment here. *Id.*; *accord Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 140–41 (4th Cir. 2020) (holding Marriot International hotels did not purposely avail itself of South Carolina's jurisdiction merely because plaintiffs could book rooms in that forum through a website, despite evidence that Marriott qualified to do business there and was involved in 90 South Carolina hotels); *cf. Hasson*, 114 F.4th at 193 (holding that a national pizza chain purposely availed itself of Pennsylvania by maintaining 85 brick-and-mortar locations there).

But Lilly's complaint also "founders at step two, which requires a strong relationship among the defendant, the forum, and the litigation." *Hasson*, 114 F.4th at 193 (cleaned up). Measuring the strength of such a relationship requires courts to

consider "the overall intensity of the defendant's forum contacts" and then to "scrutinize those contacts in the context of [the plaintiff's] claims." *Id.* (internal quotation marks omitted). If the relationship between the claims and the defendant's forum contacts are too weak, the forum lacks jurisdiction over the defendant. *Id.*

*Hasson* and *Fidrych* illustrate why the connection between Strive's contacts with Delaware and Lilly's claims are too tenuous to justify asserting jurisdiction here. The plaintiff in *Hasson* sued Papa Johns, a national pizza chain, for allegedly wiretapping his computer in violation of Pennsylvania law when the plaintiff used Papa Johns' website to buy a pizza. 114 F.4th at 187–88. According to the plaintiff, while he used his computer in Pennsylvania, Papa Johns deployed code to that computer that then recorded every move the plaintiff made on Papa Johns' website in violation of the law. *Id.* Not only did Papa Johns operate roughly 85 stores in Pennsylvania, but it also regularly marketed its goods specifically to Pennsylvania residents—including during the Philadelphia Eagles' Super Bowl game. *Id.* at 188. Despite all that, the district court granted Papa Johns' motion to dismiss for lack of personal jurisdiction. *Id.* And when the plaintiff appealed, the Third Circuit affirmed. *Id.* at 190–95.

How ever many stores Papa Johns maintained or advertisements it placed in the forum, such contacts provided no link to the location where the alleged misconduct occurred—Papa Johns' website. *Id.* at 194. Indeed, the plaintiff had pleaded no facts "regarding the company's promotion of its website *in Pennsylvania.*" *Id.* (emphasis in the original). The plaintiff's complaint had shown that Papa Johns' website allows visitors to locate and order food from stores in Pennsylvania. *Id.* But the court was unpersuaded "that the website's accessibility in Pennsylvania establishes the strong connection between the forum and the litigation that Due Process requires, especially given the unique 'doctrinal questions' that 'internet transactions' raise." *Id.* (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.,*

14

592 U.S. 351, 365 (2021)). That was especially true since the plaintiff never alleged that Papa Johns expressly aimed its website and online marketing materials at Pennsylvania in particular, never showed that Papa Johns' website was available only in Pennsylvania, provided no evidence that Papa Johns deployed the code only in the forum, or that the company tailored its website in any meaningful way to Pennsylvanians. *See id.* at 191–94. "[T]he traditional test's 'relate to' requirement 'incorporates real limits,'" the court held, and the plaintiff's effort to keep Papa Johns in Pennsylvania exceeded those limits. *Id.* at 194.

So too in *Fidrych*, which involved a South Carolina resident's effort to sue Marriott International for injuries he sustained when a shower door shattered and injured him while on a trip to Italy. 952 F.3d at 129. Hoping to maintain personal jurisdiction over Marriott in South Carolina, the plaintiff produced substantial evidence—or substantially more evidence than Lilly has here—of Marriott's presence in the forums. *Id.* Prior to his trip, the plaintiff visited the page for the Italian hotel on Marriott's website, which allegedly persuaded him to stay there. *Id.* The plaintiff showed Marriott both registered to do business in South Carolina and was involved with 90 South Carolina hotels. *Id.* Marriott also maintained a website that South Carolina residents, including the plaintiff, used to book rooms, and through which South Carolina residents provided their home addresses. *Id.* The website also included drop-down menus where South Carolina residents could select their state of residence or the location of their stay. *Id.* But none of those contacts sufficed—not even Marriott's "interactive website." *Id.* at 140–41.

Looking to the record, the court noted that Marriott used its website to engage in commercial transactions with South Carolinians (and everyone else) as well as drop-down menus, which included South Carolina as an for option for users to select. *Id.* But such conveniences, although "jurisdictionally relevant," fell short of the requisite standard—that Marriott used its website to target South Carolina residents

15

"in particular." *Id.* at 142–44. Despite the evidence that the plaintiff showed there, Marriott's case-related contacts with South Carolina were simply "too tenuous and too insubstantial to constitutionally permit the exercise of specific jurisdiction over Marriott." *Id.* at 143.

If owning 85 brick-and-mortar stores or being involved with 90 hotels within a forum and engaging in all the forum activity those defendants engaged in (advertising, interactive websites, etc.) proved too weak a connection to the plaintiffs' claims in *Hasson* and *Fidrych*, Strive's far fewer contacts should not give rise to jurisdiction here. Strive lacks any of the physical and marketing presence within the forum that those defendants had. *See* Hill Decl., ¶ 12. And Strive's "interactive website" offers no greater connection to Delaware than Papa Johns' did in Pennsylvania or Marriott's did in South Carolina. Like the plaintiffs in both cases, there is simply nothing pleaded in Lilly's complaint to show that Strive expressly aimed its website and online marketing materials at Delaware "in particular"; that Strive deployed its website only in Delaware; or that Strive tailored the content of its website in any meaningful way to Delaware. Indeed, like the plaintiffs in those cases, Lilly also failed to allege that it lost sales in Delaware as a result of Strive's activities, that any Delaware resident saw the offending posts online *before* issuing or purchasing a prescription, or that Strive permitted Delaware residents to interact with its website *because* they were in Delaware. In short, Strive's case-related contacts with Delaware are just as tenuous and insubstantial as Papa Johns' and Marriott's were in those cases. The due process clause therefore precludes Delaware's exercise of specific jurisdiction over Strive.

### 2. Lilly cannot satisfy the more demanding *Calder* test.

Because Lilly cannot satisfy the traditional test for specific jurisdiction, it has no hope of satisfying "the more demanding relatedness requirement of the effects test." *Hasson*, 114 F.4th at 189 (cleaned up). "While the 'effects' test and the

traditional test 'are cut from the same cloth,' they have distinct requirements." *Id.* Unlike the traditional test, the effects test requires Lilly to show "that the tortious actions of the defendant have a forum-directed purpose." *Id.* (cleaned up). When, as here, the allegedly tortious actions occur through a publication or website, the plaintiff must show the defendant expressly targeted those materials at the forum. *Id.* "Such targeting can be evidenced by content bearing a particular nexus to that forum or location-specific advertisements." *Id.* (citing with approval *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014)).

Here again, *Hasson* makes quick work of Lilly's complaint. Even though the gravamen of plaintiff's complaint was that Papa Johns used its website to deploy code that illegally wiretapped his computer in *Pennsylvania*, and even though the plaintiff showed Papa Johns' website allowed users to filter Papa Johns' 85 stores in the forum by location, the court held the plaintiff's allegations did not satisfy the effects test. *Id.* at 190–91. Not only did the plaintiff make no showing that "Papa Johns' website advertises a product or service bearing any special significance to Pennsylvania," he could not make that showing; "pizza has national appeal." *Id.* at 191. Moreover, that fact precluded any conclusion that Papa Johns expressly aimed the allegedly offending code at Pennsylvania merely by operating a website accessible in the forum. *Id.* Indeed, that was true even assuming that Papa Johns wiretapped the plaintiff's computer in Pennsylvania. *Id.* at 191. Even those facts could not satisfy the effects test unless the plaintiff also showed that "Papa Johns knows that a given user is in Pennsylvania *before* the code is dispatched to his browser or that Papa Johns specifically sends the code *because* the user is located in Pennsylvania." *Id.* at 191–92. But the plaintiff could not make either showing. *Id.*; *see also Advanced Tactical Ordnance*, 751 F.3d at 801–03 (reversing the district court's preliminary injunction and holding the due process clause precluded Indiana from exercising personal

jurisdiction over the defendant under the Lanham Act despite the plaintiff's evidence that the defendant made over 600 sales to forum residents, knew that the plaintiff was an Indiana company (and could thus foresee that the misleading emails and sales would harm the plaintiff in Indiana), sent at least two misleading email blasts to a list that included Indiana residents, had an interactive website available to residents of Indiana, and put its Indiana customers on its email list when they made a purchase).

Here, Lilly is in a worse position than the unsuccessful plaintiffs in *Hasson* and *Advanced Tactical Ordnance*. As shown, Strive does not aim its website at Delaware in particular. Similar to *Hasson*, there is nothing in Lilly's complaint or in the record to show that the product at the center of the case—compounded tirzepatide—bears any special significance to Delaware. Quite the contrary. Compounded tirzepatide has as much national appeal as pizza—a fact born out not by Strive's nationwide sales. Hill Decl., ¶ 16. And Lilly lacks the same allegations or evidence the plaintiffs in *Hasson* and *Advanced Technical Ordnance* also lacked: that Strive engaged in any location-specific advertisements or knows that a given user is in Delaware *before* accessing the website or that Strive permits access to its website (or the interactive features of that website) *because* the user is located in Delaware. Worst still, Lilly has not even alleged that any Delaware resident even saw Strive's offending posts online *before* doing business with Strive or that it has lost sales in Delaware as a result of Strive's alleged misconduct. *See* D.I. 1 at 5–30. There is therefore no basis for asserting jurisdiction over Strive under the effects test. This case should therefore be dismissed or transferred to Arizona—where Lilly could and should have filed in the first place.

### 3. Traditional notions of fair play and substantial justice require dismissal or transfer.

Exercising jurisdiction over Strive would also be unreasonable and thus violate both concepts of fair play and substantial justice and due process. *E.g.*, *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 260 (3d Cir. 2000); *accord TH Agric. & Nutrition, LLC v. Ace* Eur. *Group Ltd.*, 488 F.3d 1282, 1292 (10th Cir. 2007). This inquiry focuses on "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantial social policies." *BP Chems.*, 229 F.3d at 260. Although the defendant bears the burden on this prong, *id.*, that burden sits on a sliding scale: "the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction.'" *TH Agric. & Nutrition*, 488 F.3d at 1292 (cleaned up) (citing *Ticketmaster–New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994)).

Here, Lilly's showing on minimum contacts is weak (at best) because, as already shown, Strive's limited and sporadic contacts with Delaware are weak. *See* Hill Decl., ¶ 12–16. And while "states have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors," *Id.* at 1293 (cleaned up), the record shows that Delaware is the wrong state to vindicate such interests. No party is a Delaware company or based in or even near Delaware. D.I. 1 at 3–5. The product at the center of the case has national appeal. And Lilly alleges nothing about suffering harm in Delaware or about any Delaware resident seeing any offending post *before* engaging with Strive.

While Lilly, like every litigant, has an interest in obtaining convenient and effective relief, that factor cuts against Delaware as a forum. Because Lilly is not based or organized here, Delaware isn't convenient or any more effective than, say,

19

Arizona. Indeed, Lilly has already given away the game on this score because it has already filed 39 lawsuits like this one across 17 states and Washington D.C., *including in Arizona. See Exhibit 1*, Case Listing. And the only similar lawsuit now pending in Delaware is this one. *Id.*

In balancing the interstate judicial system's interest in obtaining the most efficient resolution, courts examine "the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *TH*, 488 F.3d at 1296. As shown in the record (and below), Strive's main witnesses are located in Arizona and any allegedly misleading statements all arose in Arizona, where Strive is based and created the website and posts at issue. Hill Decl. at ¶ 29. The federal law governing Lilly's Lanham Act claims is as applicable in Arizona as Delaware. And Arizona courts are more than capable of applying Delaware law if Lilly chooses to pursue its state-law claims there. *E.g.*, *Mann v. GTCR Golder Rauner,* LLC, 483 F. Supp. 2d 884, 892 (D. Ariz. 2007) (applying Delaware law).

Finally, when weighing the "shared interest of the several States in furthering fundamental substantial social policies," courts examine "whether the exercise of personal jurisdiction by [the forum state] affects the substantive social policy interests of other states . . . ." *TH*, 488 F.3d at 1297 (cleaned up). Here, Delaware's weaker connection to, and interest in, this suit should yield to Arizona's much greater interest—by any measure—in enforcing laws and policing its own. *See id.* Dismissal or transfer is therefore warranted for this additional reason.

## CONCLUSION

For the foregoing reasons, Strives Rule 12(b)(2) motion should be granted and the Court should dismiss or transfer this action to Arizona because Delaware lacks personal jurisdiction over Strive, whether under the long-arm statute or as a matter of due process.

/s/ Jeremy D. Anderson
Jeremy D. Anderson (#4515)
BAKER & HOSTETLER LLP
1201 N. Market Street, Suite 1407
Wilmington, DE 19801
jdanderson@bakerlaw.com
T: (302) 407-4224

**ATTORNEYS FOR DEFENDANT STRIVE PHARMACY LLC D/B/A STRIVE COMPOUNDING PHARMACY**

Dated: May 28, 2025

21