## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ELI LILLY AND COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Case No. 1:25-cv-00401-RGA |
| | ) |
| STRIVE PHARMACY LLC d/b/a STRIVE | ) |
| COMPOUNDING PHARMACY, | ) |
| | ) |
| Defendant. | ) |

### RESPONSE BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

OF COUNSEL:

James F. Hurst (*pro hac vice*)
Diana M. Watral (*pro hac vice*)
Robin McCue (*pro hac vice*)
Ryan Moorman (*pro hac vice*)
James Hileman (*pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000

Joshua L. Simmons (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800

David I. Horowitz (*pro hac vice*)
KIRKLAND & ELLIS LLP
2049 Century Park East, 38th Floor
Los Angeles, CA 90067
Telephone: (310) 552-4200

Dated: June 27, 2025

Oderah C. Nwaeze (#5697)
Angela Lam (#6431)
Renée M. Dudek (#6623)
FAEGRE DRINKER BIDDLE & REATH LLP
3222 Delaware Ave., Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 467-4200
Facsimile: (302) 467-4201
oderah.nwaeze@faegredrinker.com
angela.lam@faegredrinker.com
renee.dudek@faegredrinker.com

*Counsel for Plaintiff*
*Eli Lilly and Company*

## TABLE OF CONTENTS

**Page**

I.     Introduction ........................................................................................................... 1

II.    Background ............................................................................................................ 2

III.   Legal Standard ...................................................................................................... 5

IV.    Argument ............................................................................................................... 6

      A.     This Court Can and Should Exercise Specific Personal Jurisdiction Over
            Strive. ............................................................................................................ 6

            1.     Strive has purposefully availed itself of the Delaware forum .................... 7

            2.     Lilly's claim arises out of Strive's contacts with Delaware. ................... 12

            3.     Exercising personal jurisdiction over Strive accords with fair play
                and substantial justice. .............................................................................. 13

      B.     Delaware's Long-Arm Statute Authorizes Suit Against Strive. ........................... 16

      C.     In the Alternative, the Court Should Allow Jurisdictional Discovery. ................. 19

V.     Conclusion ........................................................................................................... 20

i

## **<u>TABLE OF AUTHORITIES</u>**

<u>Page(s)</u>

**Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
    751 F.3d 796 (7th Cir. 2014) ...................................................................10

*AstraZeneca AB v. Mylan Pharms., Inc.*,
    72 F. Supp. 3d 549 (D. Del. 2014) ............................................................17

*Auto Equity Loans of Delaware, LLC v. Shapiro*,
    2019 WL 4169794 (D. Del. Sept. 3, 2019) ................................................16

*Bench Walk Lighting LLC v. LG Innotek Co., Ltd.*,
    530 F. Supp. 3d 468 (D. Del. 2021) ...............................................6, 18, 20

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ..................................................................................13

*CareDx, Inc. v. Natera, Inc.*,
    2019 WL 7037799 (Dec. 20, 2019) ...........................................................12

*Carteret Sav. Bank FA v. Shushan*,
    954 F.2d 141 (3d Cir. 1992) ......................................................................13

*In re Chocolate Confectionary Antitrust Litig.*,
    602 F. Supp. 2d at 558 ..............................................................................13

*In re Chocolate Confectionary Antitrust Litig.*,
    641 F. Supp. 2d 367 (M.D. Pa. 2009) .........................................................6

*Citizens Fin. Grp., Inc. v. Citizens Nat. Bank of Evans City*,
    383 F.3d 110 (3d Cir. 2004) ......................................................................11

*Colvin v. Van Wormer Resorts, Inc.*,
    417 F. App'x 183 (3d Cir. 2011) ................................................................15

*Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*,
    723 F.2d 357 (3d Cir. 1983) ......................................................................19

*E.I. DuPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates*,
    197 F.R.D. 112 (D. Del. 2000) ...................................................................5

*Fidrych v. Marriott International, Inc.*,
    952 F.3d 124 (4th Cir. 2020) ....................................................9, 10, 11, 12

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*Focus Fin. Partners, LLC v. Holsopple,*
    241 A.3d 784 (Del. Ch. 2020)........................................................................19

*Graphics Props. Holdings Inc. v. Asus Computer Int'l, Inc.,*
    964 F. Supp. 2d 320 (D. Del. 2013)..............................................................14

*Green v. William Mason & Co.,*
    996 F. Supp 394 (D. N.J. 1998) ....................................................................14

*Hasson v. Fullstory, Inc.,*
    114 F.4th 181 (3d Cir. 2024) ...................................................................11, 12

*Intel Corp. v. Silicon Storage Tech., Inc.,*
    20 F. Supp. 2d 690 (D. Del. 1998)................................................................17

*Intercon, Inc. v. Bell Atl. Internet Sols., Inc.,*
    205 F.3d 1244 (10th Cir. 2000) ....................................................................14

*Kabbaj v. Simpson,*
    547 F. App'x 84 (3d Cir. 2013) ....................................................................17

*Kruglyak v. Home Depot U.S.A., Inc.,*
    750 F. Supp. 3d 644 (W.D. Va. 2024) ..........................................................18

*L. Sch. Admission Council, Inc. v. Tatro,*
    153 F. Supp. 3d 714 (E.D. Pa. 2015) ..............................................................7

*LaNuova D & B, S.p.A. v. Bowe Co.,*
    513 A.2d 764 (Del. 1986) ..............................................................................17

*Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino,*
    960 F.2d 1217 (3d Cir. 1992)...................................................................13, 14

*Miller Yacht Sales, Inc. v. Smith,*
    384 F.3d 93 (3d Cir. 2004)...............................................................................5

*Nowak v. Tak How Inv. Ltd.,*
    899 F. Supp. 25 (D. Mass. 1995) ..................................................................16

*O'Connor v. Shady Lane Hotel Co., Ltd.,*
    496 F.3d 312 (3d Cir. 2007).................................................................7, 12, 14

*Quantum Loyalty Systems, Inc. v. TPG Rewards, Inc.,*
    2009 WL 5184350 (D. Del. Dec. 23, 2009).....................................................5

*Rockwell Automation, Inc. v. EU Automation, Inc.,*
    2022 WL 1978726 (D. Del. June 6, 2022) ............................................ *passim*

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Shutte v. Armco Steel Corp.*,
    431 F.2d 22 (3d. Cir. 1970)................................................................15

*Tamburo v. Dworkin*,
    601 F.3d 693 (7th Cir. 2010) ............................................................10

*TH Agric. & Nutrition, LLC v. Ace Eur. Group Ltd.*,
    488 F.3d 1282 (10th Cir. 2007) ........................................................16

*Time Share Vacation Club v. Atl. Resorts, Ltd.*,
    735 F.2d 61 (3d Cir. 1984)..................................................................5

*Toys "R" Us, Inc. v. Step Two, S.A.*,
    318 F.3d 446 (3d Cir. 2003)..............................................7, 9, 11, 20

*TRE Servs, Inc. v. U.S. Bellows*, *Inc.*,
    2012 WL 2872830 (W.D. Pa. July 12, 2012) ................................8, 10

*TriStrata Tech., Inc. v. Emulgen Labs., Inc.*,
    537 F. Supp. 2d 635 (D. Del. 2008)...........................7, 10, 11, 14

*UHS of Del. v. United Health Servs.*,
    2013 WL 12086321 (M.D. Pa. Mar. 26, 2013)..................................9

*Vanderklok v. United States*,
    868 F.3d 189 (3d Cir. 2017)..............................................................11

*Wellness Publ'g v. Barefoot*,
    128 Fed. App'x. 266 (3d Cir. 2005)..............................................10, 15

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)..........................................................................13

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
    952 F. Supp. 1119 (W.D. Pa. 1997)..........................................7, 8, 10

**Statutes**

6 *Del. C.* § 2-401(2) .........................................................................19

10 *Del. C.* § 3104(c).............................................................6, 17, 18

24 *Del. C.* § 2535 ..........................................................................4, 9

24 *Del. C.* § 2537(a)(2)......................................................................11

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

24 *Del. C.* § 2538(a) ...................................................................................................9, 11

24 *Del. Admin. C.* § 2500-2.1.19 ..................................................................................9

24 *Del. Admin. C.* § 2500-3.2 ..................................................................................9, 20

24 *Del. Admin.* § 2500-3.7 ........................................................................................9

**Rules**

Fed. R. Civ. P. 12(b)(2)..............................................................................................6

**Other Authorities**

Restatement (Second) of Conflicts of Law § 188 cmt. e .............................................19

Restatement (Second) of Conflicts of Law § 191 cmt. d .............................................19

## I.    INTRODUCTION

Eli Lilly and Company ("Lilly") is a medicine company that develops, manufactures, and sells life-saving and life-changing medications, including two medicines—Mounjaro® and Zepbound®—that contain a macromolecule called tirzepatide as their active ingredient. Strive Pharmacy LLC ("Strive") is a so-called "compounding pharmacy" that advertises its mass-produced, unregulated, unapproved knockoff versions of Lilly's tirzepatide medications with several sets of false claims and misrepresentations, trading on Lilly's goodwill and putting unsuspecting patients at risk, in violation of Delaware and federal law. Strive's motion to dismiss does not challenge the legal sufficiency of Lilly's claims, asserting only that this case should move from Delaware to Arizona. Strive supports its motion with inapposite case law and declarations that, in fact, support the exercise of jurisdiction here. Lilly sued Strive under Delaware law because Strive deceptively markets and sells products in Delaware, under a Delaware pharmacy license, to Delaware consumers, using Delaware-based healthcare providers and causing harm to Lilly in Delaware. Lilly's case belongs in Delaware, and Strive's motion to dismiss for lack of personal jurisdiction should be denied.

*First*, Lilly's claims satisfy the requirements for specific personal jurisdiction under the Due Process Clause. Specific personal jurisdiction requires the defendant purposefully to avail itself of the forum state and the claim to arise out of the defendant's contacts with that state. Strive sold hundreds of thousands of dollars' worth of its knockoff tirzepatide to Delaware consumers using deceptive marketing and a network of Delaware-based, Strive-affiliated healthcare providers, after deliberately selecting and entering Delaware as a new market and obtaining a Delaware-issued pharmacy license to do so. Those sales harm Lilly and are at the core of this suit, which therefore easily satisfies these criteria. And Strive cannot show that specific jurisdiction in this suit would be inconsistent with traditional notions of fair play and substantial justice.

***Second***, this Court has jurisdiction under Delaware's long-arm statute.  Since the result of the Due Process Clause analysis is clear, the result under the Delaware long-arm statute, which is interpreted to match the Due Process Clause, follows easily.  Its text authorizes suit over non-residents who either "[t]ransact[] any business or perform[] any character of work" or "[c]ontract to supply services or things" in Delaware.  Strive does both.

***Finally***, if the Court were not certain that it has jurisdiction, the Third Circuit has made clear that before ordering transfer or dismissal, it should allow Lilly to take jurisdictional discovery.  That discovery would establish the extent of Strive's activities in Delaware.

## II.    BACKGROUND

Strive holds itself out as a compounding pharmacy that purports to offer "weight management" drugs "tailored" specially to individual consumers.[1]  But far from offering "personalized" or "tailored" medications, Strive is a large-scale, nationwide operation engaged in the mass-production and mass-marketing of knockoff tirzepatide in a manner wholly divorced from individualized patient needs and, for that matter, the limited role that compounding is meant to play in the healthcare system.  D.I. 1 ¶¶ 3-5, 43, 53-61, 77.

Lilly developed its Mounjaro® and Zepbound® medicines to treat serious medical conditions in adults, including type 2 diabetes, obesity, and obstructive sleep apnea.  *Id.*  The active pharmaceutical ingredient ("API") in Lilly's FDA-approved medicines is called tirzepatide, and Mounjaro® and Zepbound® are the only FDA-approved tirzepatide medicines.  *Id.*  These medicines were designed to be sterile injectables, and Lilly manufactures them under strict controls.  *Id.* ¶ 18.  Lilly is the only lawful supplier of tirzepatide and does not provide tirzepatide to anyone else.  *Id.* ¶¶ 30-31.

---

[1]    Strive Pharmacy, https://www.strivepharmacy.com/ (last accessed June 27, 2025).

Strive's compounded tirzepatide is not FDA-approved and has not been clinically tested or evaluated by FDA for safety, effectiveness, or quality. *Id.* ¶¶ 33, 40. Because compounders are exempt from multiple patient-protective measures, FDA has warned that the "[u]nnecessary use of compounded drugs may expose patients to potentially serious health risks," and that "poor compounding practices can result in serious drug quality problems," which in turn "can lead to serious patient injury and death."[2]

Apart from creating dangerous patient safety risks, Strive sells its compounded tirzepatide mixture through false marketing claims and deceptive business practices. *First*, Strive deceives consumers by telling them that Strive's compounded medications are "customized" to a patient's "one-of-a-kind needs" and "specifically designed" for "the needs of one particular person," and "distinctively for you." D.I. 1 ¶¶ 44, 47, 50. *Second¸* Strive tells customers that its compounded medications are superior to FDA-approved drugs because they "treat root causes" and are "safer and better for you." *Id.* ¶¶ 72-73. *Third*, Strive claims to "adhere to state and federal regulations" for safety and to go "far above and beyond regulatory standards to ensure safe, quality medications," even though Strive has historically failed to observe sterility and sanitization standards. *Id.* ¶ 76.

Strive's deceptive practices harm consumers by diverting them away from Lilly's safe and effective FDA-approved medicines and exposing them to the risks of Strive's untested and unapproved compounded products. *Id.* ¶¶ 1, 82-83, 91, 100. Strive also harms Lilly by deceiving patients into believing that its compounded products are superior to Lilly's FDA-approved medicines, which Strive claims are one-size-fits-all treatments and are, therefore, less effective.

---

[2]    FDA, *Compounding and the FDA: Questions and Answers* (Nov. 15, 2024), https://www.fda.gov/drugs/human-drug-compounding/compounding-and-fda-questions-and-answers.

*Id.* ¶¶ 4, 70-75.  This deception harms Lilly's reputation and diverts customers away from it.

Strive's deception specifically harms Lilly and consumers in Delaware.  Strive reaches out to consumers in Delaware through its website, which allows users to search and locate Strive-affiliated providers in Delaware, D.I. 8, 9 ¶ 18, and to refill their prescriptions directly through the website.  D.I. 9 ¶ 24.  After obtaining significant personal information from Delaware consumers, including credit card and address information, Strive then ships its compounded tirzepatide to those consumers in Delaware.  D.I. 1 ¶¶ 8, 10.[3]  To facilitate these sales, Strive obtained a non-resident pharmacy license from the Delaware Board of Pharmacy.[4]  *See* 24 *Del. C.* § 2535.  Strive also partners with a network of Delaware-based, "Strive affiliated providers" to distribute compounded tirzepatide in the state.  D.I. 8 at 6.

Strive has earned significant revenue from selling compounded tirzepatide in Delaware.  While it attempts to obscure the scale of its Delaware sales by characterizing cherry-picked sales figures as "de minimis," its CEO's sworn statement shows the contrary.  There, Strive CEO Nate Hill states that Strive generated approximately $2,000 in revenue from sales of compounded tirzepatide in Delaware in 2023, representing roughly .001% of its sales.  D.I. 9 ¶ 13.  Notably, however, Strive admits its sales of compounded tirzepatide in Delaware increased to approximately .16% of its overall sales.  *Id.*  While Strive characterizes this increase as "slight", it is, in fact, a *160x increase* from 2023.  Assuming Strive's total revenue was merely the same from

---

[3]    *See* Declaration of Renée M. Dudek ("Dudek Decl."), Ex. 1, Strive Pharmacy, Privacy Policy, Section 2 Consent ("When you provide us with personal information to complete a transaction, verify your credit card, place an order, arrange for a delivery or return a purchase, we imply that you consent to our collecting it and using it for that specific reason only . . . .  If after you opt-in, you change your mind, you may withdraw your consent for us to contact you, for the continued collection, use or disclosure of your information, at any time, by contacting us.").

[4]    Dudek Decl., Ex. 2, Strive Delaware Pharmacy License.

2023 to 2024, then Strive's revenue from Delaware from compounded tirzepatide sales would have increased to **$320,000**. But Strive's overall revenue was not roughly the same from 2023 to 2024. In an October 2024 press release, Strive touted itself as the "nation's fastest-growing compounding pharmacy."[5] Strive admits that "sales of compounded tirzepatide have grown" in Delaware since 2023—meaning sales in Delaware surpassed even that meaningful figure. D.I. 8 at 5. These sales and Strive's purposeful contact with Delaware amply support the exercise of jurisdiction here.

III.    **LEGAL STANDARD**

Courts can exercise personal jurisdiction over a defendant when two criteria are met: First, the exercise of personal jurisdiction must "comport[] with the requirements of the Due Process Clause of the Constitution." *E.I. DuPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates*, 197 F.R.D. 112, 119 (D. Del. 2000). Second, the actions of the defendant must fall within the ambit of the state's long-arm statute. *Id.*

Where a defendant moves to dismiss for lack of personal jurisdiction, "the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Strive insists that once a defendant challenges personal jurisdiction in a motion to dismiss, the plaintiff may not "'rely on the bare pleadings" or "mere allegations," but must "establish jurisdictional facts through sworn affidavits or other competent evidence." D.I. 8 at 8 (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984)). But defendants are only required to do so where jurisdictional allegations in the Complaint are "*contradicted* by an opposing affidavit." *Quantum Loyalty Systems, Inc. v. TPG Rewards, Inc.*, 2009 WL 5184350, at *2 (D. Del. Dec. 23, 2009) (emphasis added). Far from contradicting Lilly's allegations, the affidavit proffered by Strive's CEO admits

---

[5]    Dudek Decl., Ex. 3, Strive Press Release (October 30, 2024).

the facts Lilly alleged at a legally sufficient level to establish personal jurisdiction, including numerous sales and shipments to Delaware customers and partnerships with Delaware businesses. In evaluating motions to dismiss under Rule 12(b)(2), even where a defendant has submitted affidavits, "[a]ll factual inferences to be drawn from the pleadings, affidavits, declarations and exhibits must be drawn in the plaintiff's favor." *Bench Walk Lighting LLC v. LG Innotek Co., Ltd.*, 530 F. Supp. 3d 468, 481 (D. Del. 2021).[6]

## IV.    ARGUMENT

This Court can properly exercise personal jurisdiction over Strive. Strive has partnered with Delaware-based healthcare providers to sell compounded tirzepatide in Delaware under its Delaware-issued pharmacy license. These efforts, which have resulted in extensive Delaware sales, bring Strive well within the limits of both the Due Process Clause and Delaware's long-arm statute. 10 *Del. C.* § 3104(c). And, if there was any doubt (which there is not), Lilly is entitled to jurisdictional discovery to demonstrate the extent of Strive's connections to Delaware. For all these reasons, the Court should deny Strive's motion.

### A.    This Court Can and Should Exercise Specific Personal Jurisdiction Over Strive.

The Due Process Clause permits the Court to exercise specific jurisdiction when a defendant "purposefully directed [its] activities" to the forum, the claims "arise out of or relate to" at least one of those activities, and the exercise of jurisdiction "comport[s] with fair play and

---

[6]    *See also, In re Chocolate Confectionary Antitrust Litig.*, 641 F. Supp. 2d 367, 382 n.21 (M.D. Pa. 2009) ("The court is aware of case law suggesting that plaintiff may not rely on the pleadings alone but must produce affidavits or other affirmative evidence to overcome a jurisdictional challenge under Rule 12(b)(2). . . . However, this misstates plaintiff's burden. If the moving party fails to submit evidence contravening the allegations of the complaint, the court is bound to accept plaintiff's allegations regardless of whether plaintiff presents further evidence in support thereof.").

substantial justice." *O'Connor v. Shady Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (internal citations and quotation marks omitted) (brackets in original).  Strive has extensive sales of compounded tirzepatide in Delaware, including through a network of Strive-affiliated providers in the forum.  Lilly's claims, in turn, arise out of these sales in the forum.

           1.    *Strive has purposefully availed itself of the Delaware forum.*

Strive has purposefully directed its activities to Delaware through its web site and activities to market and sell compounded products in Delaware.  The bar for jurisdiction based on web site sales is low.  "[P]ersonal jurisdiction is proper" over internet commerce businesses like Strive's where they "clearly do[] business over the Internet," and "enter[] into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1123-24 (W.D. Pa. 1997); *see also Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003) (explaining that *Zippo* is "a seminal authority regarding personal jurisdiction based upon the operation of an Internet web site").  Applying that test, this Court has held that a defendant "purposefully direct[s] its activities at Delaware" where the defendant "received orders and payments from Delaware customers as a consequence of their initially accessing that website" and "shipped products . . . to Delaware," even if the defendant "does not actively seek business in this state via its website or otherwise, [and] has no employees or physical presence here." *Rockwell Automation, Inc. v. EU Automation, Inc.*, 2022 WL 1978726, at *7-8 (D. Del. June 6, 2022); *see also TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 639 (D. Del. 2008) (finding personal jurisdiction where defendant had "no offices, telephone listings, employees, bank accounts, advertising, personal or real property in Delaware, or any ongoing contracts with any Delaware customers," and merely "received orders from Delaware residents, and delivered . . . products to Delaware."); *L. Sch. Admission Council, Inc. v. Tatro*, 153 F. Supp. 3d 714, 721 (E.D. Pa. 2015) (personal

jurisdiction exists where forum residents made "residents made approximately two hundred and fifty (250) purchases on [defendant's] website"); *TRE Servs, Inc. v. U.S. Bellows*, *Inc.*, 2012 WL 2872830, *4-5 (W.D. Pa. July 12, 2012) (finding personal jurisdiction based on defendant's use of a commercially interactive website to conduct business in the forum).

Strive falls squarely into this line of authority. It has, by its own admission, "sold compounded tirzepatide to patients located in Delaware," and therefore must have "received orders and payments from Delaware customers" and "shipped products" to Delaware.  D.I. 9 ¶ 13; *see also id.* ¶¶ 16, 24; *Rockwell Automation*, 2022 WL 1978726, at *7.  Even the limited revenue information Strive provided suggests it earned at least $300,000 in revenue from Delaware customers in 2024. D.I. 9 ¶ 13; *see supra*, Part II.  Even more, Strive's own words make clear that it engages in the "knowing and repeated transmission of computer files" with Delaware consumers. *Zippo*, 952 F. Supp. at 1124.  Indeed, consumers must "provide [Strive] with personal information to complete a transaction, verify your credit card, place an order, arrange for a delivery[,] or return a purchase."[7]

Strive's extensive sales to Delaware residents is sufficient in itself to exercise jurisdiction, but there is more.  As Strive admits, it deliberately "start[ed]" in Delaware as a "new market" in 2023.  D.I. 9 ¶ 28.  As part of that effort, Strive concededly "avail[s] itself of opportunities with Delaware providers," "affiliate[ing]" and "partner[ing]" with them to promote Strive's products to Delaware residents.  D.I. 8 at 5-6; D.I. 9 ¶ 10.  To dispense compounded drugs to Delaware residents, Strive also obtained a pharmacy license from the Delaware Board of Pharmacy and, as part of that process, "agree[d] to abide by the pharmacy laws of the State of Delaware and to all

---

[7]    Dudek Decl., Ex. 1, Strive Pharmacy, Privacy Policy, Section 2 Consent.

rules and regulations of the Delaware State Board of Pharmacy." *See* 24 *Del. C.* § 2535;[8] 24 *Del. Admin. C.* § 2500-3.2. *Cf. UHS of Del. v. United Health Servs.*, 2013 WL 12086321, at *19-20 (M.D. Pa. Mar. 26, 2013) (holding that "the act of obtaining a license to provide [professional services] and later doing business under that license . . . constitutes an explicit availment of the benefits and privileges of doing business in the [state]."). Strive's pharmacist-in-charge likewise must have "appear[ed] personally before the [Delaware] Board within 90 days of assuming the position." 24 *Del. Admin.* § 2500-3.7.[9] To top it all off, one of the pharmacy regulations Strive agreed to abide by is a prohibition on false and misleading advertisements, which the Board can enforce by fines or by suspending or revoking Strive's license. *See* 24 *Del. C.* § 2538(a); 24 *Del. Admin. C.* § 2500-2.1.19. In short, Strive can hardly claim to be surprised to be brought into court for conduct it took significant steps to enable and knew would be governed by Delaware law.[10]

This significant and purposeful Delaware-directed activity distinguishes this case from those Strive cites. In *Toys "R" Us, Inc. v. Step Two, S.A.*, the defendant was based in Spain and its interactive website was "*entirely in Spanish*," exclusively listed "prices for its merchandise . . . in pesetas or Euros," and *only* provided shipment options for "addresses within Spain." 318 F.3d at 454. In addition, the defendant had *no* U.S. web sales until plaintiff's counsel's employees made purchases. *Id.* at 450. None of that is true here. Strive also misunderstands the holding in *Fidrych v. Marriott International, Inc.*, 952 F.3d 124 (4th Cir. 2020). That court did not, as Strive suggests,

---

[8]   Dudek Decl., Ex. 2, Strive Delaware Pharmacy License.

[9]   Delaware Board of Pharmacy, Pharmacist-in-Charge Acknowledgment,
      https://dprfiles.delaware.gov/pharmacy/Pharmacist-In-Charge%20Acknowledgement2.pdf
      (last visited June 27, 2025).

[10]  Strive mistakes Lilly's reference to Strive's non-resident pharmacy license, D.I. 1 ¶ 11, as
      suggesting that Strive is subject to general jurisdiction in Delaware. D.I. 8 at 16. Lilly makes
      no such argument and Strive's general jurisdiction arguments are misplaced.

hold that defendant "did not purposely avail itself of South Carolina's jurisdiction . . . *despite* evidence that [it] qualified to do business there and was involved in 90 South Carolina hotels." D.I. 8 at 13 (emphasis added). Rather, the court concluded that the defendant's "hotel-related connections to South Carolina" were "not relevant to our specific-jurisdiction inquiry" because they had "nothing to do with" plaintiff's slip-and-fall in *Italy*. *Fidrych*, 952 F.3d at 139. [11]

Because Strive cannot dispute its activities in Delaware, it downplays its website as "interactive" and its Delaware revenue as "de minimis." Neither is the get-out-of-personal-jurisdiction-free card that Strive thinks it is. Interactive websites *support* personal jurisdiction where they offer a sufficient "level of interactivity and commercial nature of the exchange of information," and selling through the website and exchanging information to make those sales satisfies that standard. *Zippo*, 952 F. Supp. at 1124. Nor is there a "de minimis" exception to personal jurisdiction. It exists even where defendant "received minimal revenue from the state." *Rockwell Automation*, 2022 WL 1978726, at *8. Indeed, courts have found comparable revenue statistics sufficient to support personal jurisdiction. *TriStrata Tech.*, 537 F. Supp. 2d at 638 ("0.0015 percent of [the defendant's] revenue"); *TRE Servs., Inc. v. U.S. Bellows*, Inc., 2012 WL 2872830, at *5 ("2.1% of [defendant's] annual revenue").

In any case, Strive's Delaware revenue is not "de minimis." The Third Circuit has explained that where receipts from the forum are "a small percentage of [defendant's] total business," those receipts may be "substantial in absolute terms and reflect[] the size of the state's economy relative to the national market." *Wellness Publ'g v. Barefoot*, 128 Fed. App'x. 266, 270

---

[11] Strive also cites *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014), but that court applied a different test than this Circuit uses. While several Courts of Appeals have adopted the Zippo test, the Seventh Circuit has not. *Tamburo v. Dworkin*, 601 F.3d 693, 703 n.7 (7th Cir. 2010).

(3d Cir. 2005). That is exactly the case here. Strive claims "Delaware has never occupied more than a 0.2% share of all [its] compounded tirzepatide sales," D.I. 8 at 5, but that is in line with the size of Delaware's economy relative to the national market: Delaware accounts for only 0.35% of U.S. G.D.P and its population is approximately .31% of the U.S. population.[12]

Strive also implies that this Court cannot exercise jurisdiction unless Strive targeted Delaware "in particular." D.I. 8 at 16. That may be appropriate where, as in the cases Strive cites, there were no relevant sales in the forum and the *only* relevant conduct was the availability of a website. *Toys "R" Us*, 318 F.3d at 450 (defendant had no pre-litigation U.S. sales); *Fidrych*, 952 F.3d at 139 (only "arguably relevant" conduct was defendant's "operation of its website"); *Hasson v. Fullstory, Inc.*, 114 F.4th 181, 195 (3d Cir. 2024) ("in-state restaurant sales" were "insufficiently related to . . . wiretapping claims"). But receiving orders from and sending products to the forum, as Strive did here, is sufficient even if the defendant "does not actively seek business in this state." *Rockwell Automation,* 2022 WL 1978726, at *7-8; *see also TriStrata Tech.*, 537 F. Supp. 2d at 641 ("nationwide e-mail solicitation campaign without geographical restriction" which resulted in "orders from and shipped . . . to Delaware residents" supported personal jurisdiction). And here, Strive indisputably sought to conduct its pharmacy business in Delaware because it registered as an out-of-state pharmacy, sent its Pharmacist-in-Charge to appear in person before the Delaware Board of Pharmacy, obtained a professional license to enable it to sell into the state, and subjected

---

[12] Dudek Decl., Ex. 4, U.S. Bureau of Economic Analysis (BEA), *Gross Domestic Product by State and Personal Income by State, 4th Quarter 2024 and Preliminary 2024* Table 1 (Mar. 28, 2025); *see also id.*, Ex. 5, U.S. Census Bureau, *Annual Estimates of the Resident Population for the United States, Regions, States, District of Columbia and Puerto Rico: April 1, 2020 to July 1, 2024* (Dec. 2024). Courts may take judicial notice of public economic data and U.S. Census Bureau data. *Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017) (it is appropriate to take judicial notice of information that is "publicly available on government websites"); *Citizens Fin. Grp., Inc. v. Citizens Nat. Bank of Evans City*, 383 F.3d 110, 127 (3d Cir. 2004) (taking judicial notice of census data).

itself to the regulations of the Delaware Board.[13]

### 2.    *Lilly's claim arises out of Strive's contacts with Delaware.*

Exercising personal jurisdiction over Strive is also consistent with the Due Process Clause because Lilly's claims "arise out of or relate to" Strive's activities in the forum. *O'Connor*, 496 F.3d at 317.  Strive's "promot[es] and sell[s] its tirzepatide product" in Delaware through its "partnerships with telehealth providers and *Delaware-based* healthcare providers," who "prescribe Strive's tirzepatide product *in Delaware*."  D.I. 1 ¶¶ 8, 10, 11, 12 (emphasis added).  These Delaware sales are a direct result of Strive's deceptive conduct and form the basis for Lilly's claim and asserted harm.  *Id.* ¶¶ 89-91, 99-101, 107-108.  Lilly's claims therefore arise directly from Strive's activities in the forum.  Strive insists that Lilly has not identified any specific Delaware patient who saw a misleading statement before ordering from Strive.  D.I. 8 at 1.  This argument has no place in a 12(b)(2) motion challenging the exercise of personal jurisdiction and, in any event, it is meritless.  Lilly is entitled to a "presumption of consumer deception" after pleading that Strive's statements are literally false.  *CareDx, Inc. v. Natera, Inc.*, 2019 WL 7037799, at *10 (Dec. 20, 2019).

That relationship between Delaware, Strive's conduct, and Lilly's harm distinguishes this case from those Strive cites.  *See* D.I. 8 at 14.  *Hasson* was about "wiretapping claims [that] neither involve a 'physical' product nor arise out of (or relate to) Papa Johns' brick-and-mortar operations in [the forum]."  114 F.4th at 195 n.5.  And *Fidrych* involved a slip-and-fall in Italy; defendant's "connections to . . . hotels located in South Carolina" were "not relevant."  952 F.3d at 139.  Here,

---

[13]    *See, e.g.*, 24 *Del. C.* § 2537(a)(2) (requiring nonresident pharmacy permit holders to comply with all requests for information from the Board); *id.* § 2538(a) (authorizing the Board of Pharmacy to fine or to suspend or revoke the license of a nonresident pharmacy that violates the Board's rules and regulations).

by contrast, Strive's sales of a physical product in Delaware through deceptive practices are central to Lilly's claims.

        3.     *Exercising personal jurisdiction over Strive accords with fair play and substantial justice.*

Once a plaintiff makes out a prima facie case that jurisdiction is proper based on minimum contacts, "the burden falls upon the defendant to show that the assertion of jurisdiction is *unconstitutional*." *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1226 (3d Cir. 1992) (emphasis in the original). The defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Carteret Sav. Bank FA v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992) (citations omitted).

Strive argues that exercising personal jurisdiction here is not reasonable or consistent with traditional notions of fair play and substantial justice. But as a nationwide company with hundreds of thousands of dollars' worth of Delaware sales, a network of Delaware-based, Strive-affiliated providers, and a Delaware pharmacy license supporting its efforts, Strive should "reasonably anticipate being haled into court" in Delaware. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Courts consider multiple factors in evaluating whether the exercise of personal jurisdiction is reasonable, including: (1) "the burden on the defendant," (2) "the forum State's interest in adjudicating the dispute," (3) "the plaintiff's interest in obtaining convenient and effective relief," (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and (5) the "shared interest of the several States in furthering fundamental substantive social policies." *World–Wide Volkswagen Corp.*, 444 U.S. at 292. "No single factor is dispositive of the jurisdictional analysis." *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d at 558. The Supreme Court rejects "any talismanic jurisdictional formula" and states

that the "facts of each case must always be weighed" when evaluating defendant's fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 485-86 (1985). Consideration of any of these factors is "discretionary with the court." *Mellon Bank (E.)*, 960 F.2d at 1222; *see also id.* (emphasizing that the Supreme Court "emphasized these additional factors 'may' be considered 'in appropriate cases.'").

Strive does not and cannot meet its burden. *First*, the burden on Strive of litigating in Delaware is minimal. Strive is "a large interstate company" and must be "accustomed to conducting business and litigation in multiple states." *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1249 (10th Cir. 2000). And Strive has retained Delaware counsel. *See TriStrata Tech.*, 537 F. Supp. 2d at 642 (recognizing the ability to retain Delaware counsel as evidence that litigating in Delaware not substantially burdensome). Any minimal burden Strive experiences will be counterbalanced by the equivalent burdens on Lilly; Lilly likewise is not located in Delaware. *See O'Connor*, 496 F.3d at 325 (holding that jurisdiction over a Barbados corporation in Pennsylvania was reasonable since plaintiffs would be equally burdened by litigating in Barbados).

Strive's CEO's fear that litigating in Delaware would be "incredibly disruptive" misunderstands modern litigation. *See* D.I. 9 ¶ 25. Mr. Hill assumes that Strive's "entire executive team, or most of it" will be "in Delaware defending this case for prolonged periods." *Id.* ¶ 27. There is no basis for that assumption. "Advances in technology have significantly lessened the burden of litigating in a distant district." *Graphics Props. Holdings Inc. v. Asus Computer Int'l, Inc.*, 964 F. Supp. 2d 320, 330 (D. Del. 2013). Consequently, "[g]eography is not the touchstone of fairness. In an age when business is routinely conducted by electronic technology, and air travel brings the two national coasts within hours of each other, state boundaries are less relevant to the determination of fairness." *Green v. William Mason & Co.*, 996 F. Supp 394, 398 (D. N.J. 1998).

14

While Strive makes much of the fact that its executive team resides in Arizona, they can and would be deposed there. And at trial or an evidentiary hearing, there is no reason to believe that Strive's entire executive team would have to appear all at once, in Delaware.[14] Unsurprisingly, Strive's own brief does not take Mr. Hill's concerns seriously and does not contend that litigating in Delaware would be burdensome. D.I. 8 at 19-20.

*Second*, Delaware has an interest in resolving this dispute, because Delaware has an interest in "protecting its general population from allegedly misleading advertising." *Wellness Pub.*, 128 F. App'x at 270; *see also Colvin v. Van Wormer Resorts, Inc.*, 417 F. App'x 183, 188 (3d Cir. 2011) (forum state has an interest in "providing effective means of redress when foreign corporations 'reach into the state' and transact business with its citizens"). Strive purposefully entered the Delaware market, obtaining a professional license that subjects it to extensive oversight and regulation by the Delaware Board of Pharmacy, and then made hundreds of thousands of dollars in sales to Delaware residents through deceptive practices, exposing them to unnecessary risks posed by compounded tirzepatide. Delaware has an obvious interest in protecting its citizens from these risks and from Strive's deceptive practices.

*Third*, Lilly's interest in obtaining convenient and effective relief militates in favor of Lilly's chosen forum. Lilly chose this forum based on the harm it and Delaware consumers have incurred in Delaware. Granting Strive's motion or sending this case to Arizona would only delay Lilly's ability to vindicate harms it has suffered in Delaware. Indeed, the Third Circuit has held, at least on a motion to transfer, that "unless the balance of convenience of the parties is *strongly*

---

[14]  Strive's allusion to unidentified doctors based in Arizona that would purportedly testify on its behalf should be given no weight. In any case, if they were in fact unavailable (and unwilling to travel for a day of testimony) they could appear at trial by deposition or, upon appropriate motion, by video.

in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d. Cir. 1970) (internal citation and quotation marks omitted) (emphasis added).

*Fourth*, the judiciary's interest in efficient resolution supports a Delaware forum. As Strive acknowledges, this interest is affected by "the location of witnesses," "where the wrong underlying the lawsuit occurred," and "what forum's substantive law governs the case." *TH Agric. & Nutrition, LLC v. Ace Eur. Group Ltd.*, 488 F.3d 1282, 1296 (10th Cir. 2007); *see also* D.I. 8 at 20. Lilly's case concerns Strive's sales to patients in Delaware resulting from Strive's promotions in Delaware, including through its partnerships with Delaware-based providers. While Strive executives might reside in Arizona, other key witnesses, like the affected consumers and the Strive-affiliated providers, are in Delaware, and the wrongs underlying the suit occurred there. Lilly's case is also governed by Delaware as well as federal law. To be sure, while Arizona courts can apply Delaware law, it is more efficient for this Court, with its greater expertise in Delaware law, to do so. *Auto Equity Loans of Delaware, LLC v. Shapiro,* 2019 WL 4169794, at *10 (D. Del. Sept. 3, 2019) (finding that a district will have "greater familiarity with the state law" of the state in which it sits).

*Finally*, there is no conflict between the substantive social policies of Delaware and Arizona. Lilly's Lanham Act claims are covered by federal law, and both Arizona and Delaware prohibit deceptive and unfair trade practices. Preventing false and deceptive ads is consistent with the substantive social policy of both states, and courts disregard this factor where neither state's substantive social policies conflict. *See e.g.*, *Nowak v. Tak How Inv. Ltd.*, 899 F. Supp. 25, 34 (D. Mass. 1995) (holding this factor "neutral" where the two jurisdictions had "similar social polic[ies]").

### B.    Delaware's Long-Arm Statute Authorizes Suit Against Strive.

Strive's conduct toward Delaware also falls squarely within the scope of Delaware's long-

arm statute, because Strive transacts extensive business in the forum and contracts to supply services here.

The Delaware Supreme Court has made clear that the Delaware long-arm statute, 10 *Del. C.* § 3104(c), is "to be broadly construed to confer jurisdiction to the maximum extent possible under the Due Process Clause." *Kabbaj v. Simpson*, 547 F. App'x 84, 86 n.6 (3d Cir. 2013) (citing *LaNuova D & B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986)). Because Lilly's suit comports with the Due Process Clause, *see supra*, it is also authorized by Delaware's long-arm statute. *AstraZeneca AB v. Mylan Pharms., Inc.*, 72 F. Supp. 3d 549, 552 (D. Del. 2014) ("The Delaware long-arm statute . . . has been construed broadly to confer jurisdiction to the maximum extent possible under the Due Process Clause, so the focus of the inquiry traditionally rests on the constitutional component.") (internal citations and quotation marks omitted).

That result is clear from the text of the statute. Under the relevant portion, a court may exercise jurisdiction over a non-resident who either:

(1) Transacts any business or performs any character of work or service in the State; [or]

(2) Contracts to supply services or things in this State[.]

10 *Del. C.* § 3104(c)(1)-(2). While only one of these criteria is needed to establish personal jurisdiction, Strive's conduct easily satisfies both.

*First*, Strive transacts business and provides services in Delaware. Strive does not dispute that but argues that Lilly's claim must also have "its origin in the asserted transaction." D.I. 8 at 9 (citing *Intel Corp. v. Silicon Storage Tech., Inc.*, 20 F. Supp. 2d 690, 695 (D. Del. 1998)). It does. As explained in the Complaint, "Strive operates and conducts business *in Delaware*, including by promoting and selling its tirzepatide product here." D.I. 1 ¶¶ 8, 10 (emphasis added). Strive "does this through partnerships with telehealth providers and *Delaware-based* healthcare

17

providers." *Id.* ¶ 11 (emphasis added). These Strive-affiliated providers "are located *in Delaware* and prescribe Strive's tirzepatide product *in Delaware*." *Id.* ¶ 12 (emphasis added). Strive works with these Delaware-based providers to sell tirzepatide. *Id.* ¶ 11. And as a result of Strive's deceptive practices, Lilly has suffered monetary damages and lost sales, while Strive has profited from the sales it made while trading on Lilly's goodwill. *Id.* ¶¶ 89-91, 99-101, 107-108. This case thus "has its origin" in sales made in Delaware. *Id.* ¶ 11.

Strive implies that it can freely sell its falsely advertised product in Delaware, as long as its false "advertisements . . . occurred only online." D.I. 8 at 9. Strive is incorrect. As this Court has held, even where a defendant "does not actively seek business in this state" and merely makes its "website accessible in Delaware," jurisdiction is proper where the defendant "received orders and payments from customers in Delaware, and shipped . . . products to Delaware." *Rockwell Automation*, 2022 WL 1978726, at *8.

*Second*, Strive "[c]ontracts to supply . . . things" in Delaware. 10 *Del. C.* § 3104(c)(2). Strive denies this, suggesting its "actions in fulfilling prescriptions" are "the only conceivable contract relevant" and "occurred in Arizona." D.I. 8 at 10.[15] But while Strive asserts it has no "formal relationship" with those providers (D.I. 8 at 6), it admits it "partner[s] with" "health care providers" and describes providers as "affiliated" with it. D.I. 9 ¶ 10; *see also id.* ¶ 19 (discussing "how [Strive] established a relationship with" Delaware providers"); D.I. 8 at 6. Strive's own evidence establishes that Strive has extensive contacts in Delaware. At the very least, "[a]ll factual

---

[15] Mr. Hill's assertion that he does not "consider[] a medication sold to a patient as a 'contract'" is irrelevant and nonsensical. D.I. 9 ¶ 12. Where a customer purchases goods from an online seller those parties have entered into a contract. *See, e.g.*, *Kruglyak v. Home Depot U.S.A., Inc.*, 750 F. Supp. 3d 644, 657 (W.D. Va. 2024) (holding that an online purchase creates a contract). Unsurprisingly, Strive concedes in its motion that its "actions in fulfilling prescriptions" constitute "contract[s]." D.I. 8 at 10.

inferences" from Lilly's pleadings and Strive's affidavits "must be drawn in the plaintiff's favor." *Bench Walk Lighting*, 530 F. Supp. at 481.

In any case, neither Strive's contracts with providers nor its contracts to sell to consumers "occurred in Arizona." They were not negotiated in Arizona; there is "no place of negotiation" when parties are located in separate states. *Focus Fin. Partners, LLC v. Holsopple*, 241 A.3d 784, 807 (Del. Ch. 2020) (quoting Restatement (Second) of Conflicts of Law § 188 cmt. e. ("[T]here is no one single place of negotiation . . . when the parties do not meet but rather conduct their negotiations from separate states . . . .")). Nor were the contracts performed in Arizona. Strive's Delaware-based provider affiliates perform under their contracts with Strive in Delaware, when they meet with patients and issue prescriptions in Delaware. And Strive performs its contracts with Delaware residents in Delaware, when it delivers medication to them. 6 *Del. C.* § 2-401(2) ("[T]he seller completes his or her performance with . . . [upon] the physical delivery of the goods[.]"); Restatement (Second) of Conflicts of Law § 191 cmt. d. ("The place of delivery is the place where . . . the seller completes his performance with reference to the physical delivery.") (internal citations and quotation marks omitted).

In short, Delaware's long-arm statute authorizes personal jurisdiction here.

## C.    In the Alternative, the Court Should Allow Jurisdictional Discovery.

If the Court concludes that Lilly's allegations and Strive's affidavit are inadequate alone to warrant denying Strive's Motion, Lilly respectfully requests leave to conduct limited jurisdictional discovery. The Third Circuit has made clear that, where a plaintiff "bears the burden of demonstrating contacts with the forum state sufficient to give the court in personam jurisdiction . . . the district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging that burden." *Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*, 723 F.2d 357, 362 (3d Cir. 1983). This is particularly true where the plaintiff is

"attempting to show either 'minimum contacts' or that the defendant is 'doing business' in the state." *Id.* The Third Circuit has further stated that where "a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite [minimum contacts] . . . the plaintiff's right to conduct jurisdictional discovery should be sustained." *Toys "R" Us*, 318 F.3d at 456. Lilly has met its burden to plead significant contacts between Strive and Delaware and to show that Strive is doing business here. Lilly alleges that Strive is deceptively "promoting and selling its tirzepatide product here," D.I. 1 ¶¶ 8, 10, 16, and partnering with "Delaware-based healthcare providers" to sell Strive products in Delaware. *Id.* ¶¶ 11-16; 38; 54-56. Strive does not dispute that it fills prescriptions for and collects payment from Delaware residents, D.I. 8 at 10; D.I. 9 ¶ 22, nor that it partners with "Strive-affiliated providers" in Delaware. D.I. 8 at 6; D.I. 9 ¶¶ 16-19. Strive only disputes the nature and quantity of its sales in Delaware, D.I. 8 at 5, 9; D.I. 9 ¶¶ 13-14, and the nature of its relationship with its affiliated Delaware providers. D.I. 8 at 6; D.I. 9 ¶ 12. Strive also claims that it "has never been physically present in Delaware for any reason," D.I. 8 at 6; D.I. 9 ¶¶ 10, 20, when its pharmacist-in-charge was legally required to appear before the Delaware Board of Pharmacy. 24 *Del. Admin. C.* § 2500-3.7. Limited jurisdictional discovery could resolve these discrepancies.

Lilly believes the Court's jurisdiction is clear, especially when all factual inferences from Lilly's Complaint and Strive's Motion and affidavits are drawn in Lilly's favor as they must be. *Bench Walk Lighting*, 530 F. Supp. at 481. If the Court concludes there are unresolved factual disputes that preclude denying the motion, the Court is entitled to full information to resolve that dispute. Accordingly, it should order jurisdictional discovery.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny the Motion. In the alternative, it should permit Lilly to take jurisdictional discovery.

20

Respectfully submitted,

*/s/ Oderah C. Nwaeze*

Oderah C. Nwaeze (#5697)
Angela Lam (#6431)
Renée M. Dudek (#6623)
FAEGRE DRINKER BIDDLE & REATH LLP
3222 Delaware Ave., Suite 1410
Wilmington, Delaware 19801
Telephone:  (302) 467-4200
Facsimile:  (302) 467-4201
oderah.nwaeze@faegredrinker.com
angela.lam@faegredrinker.com
renee.dudek@faegredrinker.com

*Counsel for Plaintiff*
*Eli Lilly and Company*

OF COUNSEL:

James F. Hurst (*pro hac vice*)
Diana M. Watral (*pro hac vice*)
Robin McCue (*pro hac vice*)
Ryan Moorman (*pro hac vice*)
James Hileman (*pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:  (312) 862-2000

Joshua L. Simmons (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800

David I. Horowitz (*pro hac vice*)
KIRKLAND & ELLIS LLP
2049 Century Park East, 38th Floor
Los Angeles, CA 90067
Telephone: (310) 552-4200

Dated:  June 27, 2025