IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ELI LILLY COMPANY )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>STRIVE PHARMACY LLC d/b/a )<br>STRIVE COMPOUNDING )<br>PHARMACY )<br>)<br>Defendant. ) | Case No. 1:25-cv-00401-RGA |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION**

Jeremy D. Anderson
BAKER & HOSTETLER LLP
1201 N. Market Street, Suite 1407
Wilmington, DE 19801
jdanderson@bakerlaw.com
T: (302) 658-5070

**ATTORNEYS FOR DEFENDANT STRIVE
PHARMACY LLC D/B/A STRIVE
COMPOUNDING PHARMACY**

Dated: July 15, 2025

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................1

ARGUMENT .........................................................................................................................1

I.      The Record Bolstered by Precedent Precludes Any Conclusion that Lilly's Claims "Arise Out of" Strive's Limited Contacts with Delaware.........1

II.     Lilly's Position Ignores the "Real Limits" that Related-To Jurisdiction Is Supposed to Impose. ...................................................................................8

III.    Delaware's Long-Arm Statute Offers Lilly No Quarter. .................................9

IV.    The Court Should Deny Lilly's Perfunctory Request for Jurisdictional Discovery. ...................................................................................................10

CONCLUSION.....................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
   751 F.3d 796 (7th Cir. 2014) ................................................................................*passim*

*Best Van Lines, Inc. v. Walker*,
   490 F.3d 239, 251–52 (2d Cir. 2007) .............................................................. 5–6

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.*,
   582 U.S. 255 (2017) ............................................................................................ 6–8

*Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*,
   42 F.4th 948, 952–53 (8th Cir. 2022) ............................................................... 6

*Fidrych v. Marriott Int'l, Inc.*,
   952 F.3d 124 (4th Cir. 2020) ............................................................................... 6

*Ford Motor Co. v. Montana Eighth* Jud. Dist. Court,
   592 U.S. 351, 365 (2021) ................................................................................ 2–3

*Hasson v. FullStory, Inc.*,
   114 F.4th 181 (3d Cir. 2024) ..............................................................................*passim*

*inno360, Inc. v. Zakta*, LLC,
   50 F. Supp. 3d 587, 596–97 (D. Del. 2014) .................................................... 10

*Intel Corp. v. Silicon Storage Tech., Inc.*,
   20 F. Supp. 2d 690 (D. Del. 1998) ................................................................ 9–10

*Johnson v. TheHuffingtonPost.com, Inc.*,
   21 F.4th 314 (5th Cir. 2021) ............................................................................ 5–6, 9

*Katz v. Apuzzo*,
   2019 WL 3219513 (D. Del. July 17, 2019) ...................................................... 9

*Keeton v. Hustler Magazine, Inc.*,
   465 U.S. 770, 773–75 (1984) .............................................................................. 3

*Kindig It Design, Inc. v. Creative Controls, Inc.*,
   157 F. Supp. 3d 1167, 1174 (D. Utah 2016) .................................................... 6

*L. Sch. Admission Council, Inc. v. Tatro*,
   153 F. Supp. 3d 714 (E.D. Pa. 2015) ................................................................ 2

*O'Connor v. Sandy Lane Hotel Co., Ltd.*,
   496 F.3d 312 (3d Cir. 2007) ................................................................................ 9

*Old Republic Ins. Co. v. Cont'l Motors, Inc.*,
   877 F.3d 895 (10th Cir. 2017) ............................................................................ 8

*Ontel Prods. Corp. v. Top Source Media LLC*,
   No. 22-cv-04141, 2023 WL 7103357 (D.N.J. Oct. 26, 2023) ........................ 8

*Parker v. Learn Skills Corp.*,
    530 F. Supp. 2d 661 (D. Del. 2008) ................................................... 9–10

*Registered Agents, Ltd. v. Registered Agent, Inc.*,
    880 F. Supp. 2d 541, 548 (D. Del. 2012) ........................................................ 10

*Rockwell Automation, Inc. v. EU Automation, Inc.*,
    2022 WL 1978726 (D. Del. June 6, 2022) ........................................................ 2

*Rhodes v. Azeff*,
    No. 22-cv-101, 2025 WL 327297 (W.D. Pa. Jan. 29, 2025) .............................. 10

*TriStrata Tech., Inc. v. Emulgen Labs., Inc.*,
    537 F. Supp. 2d 635 (D. Del. 2008) .................................................................. 2

*UHS of Delaware, Inc. v. United Health Servs., Inc.*,
    No. 1:12-CV-00485, 2013 WL 12086321 (M.D. Pa. Mar. 26, 2013) ............... 2, 5

*Wellness Publ'g v. Barefoot*,
    128 F. App'x. 266 (3d Cir. 2005) .................................................................. 2, 5

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
    952 F. Supp. 1119 (W.D. Pa. 1997) .................................................................. 5

**Statutes**

10 Del. C. § 3104 ................................................................................................. 4, 9

**Secondary Authorities**

Alan M. Trammell, Derek E. Bambauer, Personal Jurisdiction and the "Interwebs,"
    100 Cornell L. Rev. 1129 (2015) ...................................................................... 6

**INTRODUCTION**

Unable to defend the litany of personal jurisdiction theories advanced in its complaint, Lilly retreats in its opposition brief (D.I. 12) to just one—the traditional "purposeful availment" test—and thus abandons all others (including the *Calder* effects test). *See* D.I. 12 at 7–13.[1] In fact, Lilly retreats even deeper into that traditional test and admits that unless Lilly's claims arise out of Strive's Delaware contacts, this Court lacks personal jurisdiction. And that is why Lilly should lose. The record—indeed Lilly's own complaint—shows that Strive's relative few contacts with Delaware (e.g., delivering of product and becoming licensed here) does not give rise to any of Lilly's claims in any cognizable way, including under Delaware's long-arm statute. Lilly's opposition brief instead confirms what the complaint already shows on its face: that Lilly's claims all arise out of, and are limited to, online advertisements Strive created in Arizona about a universally popular product that Strive aimed at everyone in the United States and *not* from, say, mere product sales (as in nearly every case Lilly cites in its opposition brief). Lilly argues otherwise only by ignoring precedent, blurring vital distinctions between important jurisdictional doctrines (general and specific jurisdiction), and flouting federalism. The Court should therefore grant Strive's motion (and deny Lilly's perfunctory request for jurisdictional discovery) and either dismiss or transfer this case so that it may be waged where it should have been filed originally—Arizona.

**I.    The Record Coupled with Precedent Precludes Any Conclusion that Lilly's Claims "Arise Out of" Strive's Limited Contacts with Delaware.**

Lilly opposes Strive's motion only by ignoring two core concepts of specific jurisdiction: the doctrine is "claim specific," *Hasson v. FullStory, Inc.*, 114 F.4th 181, 189 (3d Cir. 2024); and hinges on Strive's own relationship with Delaware and *not* on

---

[1] "When a party files an opposition brief and fails to contest an issue raised in the opening brief, the issue is considered waived or abandoned by the non-movant." *Peters v. Ryan*, No. 16-cv-01332, 2017 WL 1393692, at *2 (D. Del. Apr. 13, 2017) (collecting cases).

that of any third party (such as providers with Delaware patients). *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (citing *Walden v. Fiore*, 571 U.S. 277, 286–87 (2014)). Once the correct law is applied to the record, however, Lilly's arguments quickly fall apart.

      Lilly's disregard for the claim-specific nature of specific jurisdiction is most evident in the inapposite cases cited in its opposition brief (*e.g.*, D.I. 12 at 7–10), where product sales in the forum directly gave rise to the plaintiff's causes of action. *E.g.*, *Wellness Publ'g v. Barefoot*, 128 F. App'x. 266, 270 (3d Cir. 2005) (holding that certain defendants' airing of an "informercial" on network television for, and then delivering written material to, New Jersey residents that plaintiff alleged infringed its copyright justified specific jurisdiction in New Jersey); *Rockwell Automation, Inc. v. EU Automation, Inc.*, 2022 WL 1978726, at *7–8 (D. Del. June 6, 2022) (holding that Delaware could exercise specific jurisdiction over an Illinois defendant sued for trademark infringement because the defendant sold and delivered products into Delaware that allegedly infringed the trademark of a Delaware company); *L. Sch. Admission Council, Inc. v. Tatro*, 153 F. Supp. 3d 714, 721 (E.D. Pa. 2015) (concluding that specific jurisdiction existed over nonresident defendant accused of copyright infringement because the plaintiff alleged that the defendant sold infringing materials into the forum state); *UHS of Delaware, Inc. v. United Health Servs., Inc.*, No. 1:12-CV-00485, 2013 WL 12086321, at *7 (M.D. Pa. Mar. 26, 2013) (holding that Pennsylvania could exercise personal jurisdiction over an out-of-state company who physically entered the state and provided in-home care to patients under a trade name accused of infringing the plaintiff's trademarks); *TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 639 (D. Del. 2008) (finding Delaware had specific jurisdiction over the nonresident defendant accused of patent infringement because it sold and shipped infringing articles to Delaware residents); *see also Ford Motor Co. v. Montana Eighth* Jud. *Dist. Court*, 592 U.S. 351, 365 (2021) (holding that

Montana and Minnesota could exercise jurisdiction over Ford Motor in two products liability cases where Ford had sold, advertised, marketed, and helped service the allegedly defective cars in each state for decades and such cars injured each plaintiff in each state); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773–75 (1984) (holding that a publisher's sales of thousands of defamatory publications into the forum gave rise to specific jurisdiction there even if the plaintiff resided elsewhere). Had Lilly sued Strive for trademark infringement (under 15 U.S.C. § 1114) because Strive, say, placed the registered Lilly trademark "Zepbound" on product shipped to Delaware, these cases might matter. But that is not Lilly's claim. So these cases are inapposite.

Indeed, if Strive had quietly filled prescriptions for compounded tirzepatide from its facility in Arizona (D.I. 1 at 18 n.36) and not advertised online, there would be no suit. Strive's products are not at issue. *See* D.I. 1 ¶ 77. Lilly's claims center solely on what Strive allegedly said online to everyone about "personalized medicine" and the universally popular medications Strive lawfully compounds once a licensed medical professional prescribes them. *E.g.*, D.I. 1 at 1–2. But none of that gives rise to specific jurisdiction in Delaware and for all the reasons explained in *Hasson* and *Advanced Tactical*: Strive's online marketing materials aren't aimed at Delaware; the product is universally popular; and Lilly's complaint provides too tenuous a link between what Strive has said online and Delaware, including because Lilly hasn't shown that anyone in Delaware saw Strive's online materials before submitting a prescription. *See* D.I. 8 at 2–6. And even after Lilly's opposition brief, those facts remain undisputed.

Within the context of specific jurisdiction, neither Strive's registering to do business nor its becoming licensed here suddenly pushes Lilly across the line, despite what Lilly argues in its opposition brief. Such contacts are simply too weak to establish the claim-specific connection required here. As Lilly's complaint confirms on its face, those forum contacts (such as something Strive said to the licensing board)

3

aren't what animates Lilly's claims, just as in *Hasson* Papa Johns' extensive advertisements and brick-and-mortar stores bore no causal connection to the plaintiff's allegations of wiretapping. 114 F.4th at 193–94. What gave rise to the plaintiff's claims in *Hasson* was Papa Johns' website, which allegedly pushed code to the plaintiff's computer in the forum but was not aimed at the forum, and therefore did not give rise to specific jurisdiction. *Id*. The facts here, however, are worse for Lilly: rather than push code to computers in Delaware, Strive merely posted materials online—from Arizona. Indeed, by abandoning any argument for long-arm jurisdiction under 10 Del. C. § 3104 (c)(3)—the prong that authorizes jurisdiction over a nonresident who "[c]auses tortious injury in the State by an act or omission in this State"—Lilly all but conceded Strive's contacts do not give rise to its claims. *See* D.I. 12 at 17–19 (omitting and thus abandoning § 3104(c)(3) as a basis for long-arm jurisdiction).

The only thing more surprising than Lilly's terse discussion of *Hasson* or abandonment of § 3104(c)(3) in its opposition brief is Lilly's repudiation of any need to show that any Delaware residents saw Strive's materials before having their prescriptions filled. *See* D.I. 12 at 12. Whatever entitlement Lilly may have "to a presumption of consumer deception" on the merits, D.I. 12 at 12, Lilly cites nothing to support its self-proclaimed entitlement to a further presumption that forum residents were exposed to allegedly false materials before submitting a prescription— the gravamen of Lilly's whole complaint. And as far as Strive can tell, there isn't any such authority.

*Hasson* itself refutes any such notion. Indeed, the plaintiff there lost despite having the sort of proof Lilly still lacks: that Papa Johns advertised its products extensively in the forum (such as on television during the Super Bowl). 114 F.4th at 193–94. What the plaintiff needed, and what Lilly similarly lacks, was proof that Papa Johns directed advertisements at the forum while also featuring the offending

4

website, which forum residents would then see and then follow to the website. *Id.*; *see also Wellness Publ'g*, 128 F. App'x. at 270 (airing of an infringing infomercial in New Jersey gave rise to specific jurisdiction); *UHS of Delaware*, 2013 WL 12086321, at *7 (using an infringing trademark while physically performing services in the state provided the requisite nexus between forum and the alleged misconduct). Insisting on such a connection ensures the requisite nexus exists between the alleged misconduct, the forum, and the defendant. *See Hasson*, 114 F.4th at 193. And other cases have reached similar conclusions and without any of Lilly's "presumptions," including *Advanced Tactical*. *See* 751 F.3d at 801–02 (holding that plaintiff could not establish the requisite connection between the defendant's online contact and Indiana where plaintiff failed to show that Indiana residents saw the defendant's post before making their purchases); *see also Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 321 (5th Cir. 2021) (holding that the plaintiff could not sue an internet publication in Texas for publishing an allegedly defamatory article where the plaintiff failed even to allege that the publication "solicited Texan visits to the alleged libel," such as through geotargeted ads). There is no "presumption" on this score.

Tellingly, Lilly made no effort to discuss, much less distinguish, *Advanced Tactical* in its opposition brief. Quite the contrary. Lilly simply ignored *Advanced Tactical*'s dispositive logic and for no reason other than the Seventh Circuit has not "adopted the Zippo test" (assuming that test even remains valid[2]). D.I. 12 at 10 n.11.

---

[2] Whatever result Lilly thinks is warranted under the Zippo test's namesake (*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997)), *Hasson* requires otherwise. Indeed, Lilly's over-reliance on the broadest application of the Zippo test only further betrays how weak Lilly's argument is. Within the realm of personal jurisdiction, few rules have been more heavily criticized—or as worthy of all such criticism—as the "sliding scale" approach *Zippo* established. It is hard to overstate how drastically the world has changed since 1997, *especially* as to the internet. It's no wonder then that several courts have openly and rightly questioned the utility and inconsistent application of the Zippo test. *E.g.*, *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 251–52 (2d Cir. 2007). More importantly, *Zippo*'s "sliding scale" approach mirrors the one the Court roundly rejected as "difficult to square with our precedents," in *Bristol-Myers Squibb Co. v. Superior Court of California, San*

5

But the Court should see Lilly's puzzling and baseless dodge for what it is: a tacit concession that specific jurisdiction is lacking here and for all the reasons *Advanced Tactical* established.

Strive already pointed out in its motion (D.I. 8 at 17) why Lilly's view of *Advanced Tactical* is wrong. The Third Circuit expressly endorsed *Advanced Tactical* in *Hasson*. *See* 114 F.4th at 192. So have other "Zippo courts" when rejecting arguments like Lilly's.³ *E.g.*, *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 952–53 (8th Cir. 2022); *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 320–21 (5th Cir. 2021); *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 143 (4th Cir. 2020); *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 915–16 (10th Cir. 2017); *Ontel Prods. Corp. v. Top Source Media LLC*, No. 22-cv-04141, 2023 WL 7103357, at *4 (D.N.J. Oct. 26, 2023). And these Zippo courts recognize and endorse *Advanced Tactical* because it was correctly decided and is otherwise consistent with precedent. *See* 751 F.3d at 803. So should this Court.

Perhaps sensing that Strive's online conduct cannot anchor jurisdiction in Delaware under authorities like *Hasson*, *Fidrych*, and *Advanced Tactical* (among still others), Lilly tries in its opposition brief to avoid them another way: through Strive's purported "partnerships with telehealth providers and Delaware-based healthcare providers, who prescribe Strive's tirzepatide product in Delaware." D.I. 12 at 12 (citation modified). But that path is equally foreclosed by precedent and the record.

---

*Francisco Cnty.*, 582 U.S. 255 (2017). *Id.* 260–61, 264–65; *see also* Alan M. Trammell, Derek E. Bambauer, *Personal Jurisdiction and the* "Interwebs," 100 Cornell L. Rev. 1129, 1149 (2015) ("Put bluntly, the *Zippo* court's highly influential test is both wrong and useless."). As shown in Strive's motion and above, Strive's arguments and supporting authorities are consistent with *Zippo*. So Zippo's obsolescence is not at issue. But if Lilly is right, and the Zippo test somehow requires a different result, the Court should declare the test abrogated under *Bristol-Myers Squibb* (among other more recent precedents) and apply traditional tests (as non-Zippo jurisdictions do). *Zippo* is as obsolete and quaint as the dial-up internet world that gave rise to it.
³ Since its introduction in 1997, the Courts of Appeals for the Third, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and D.C. Circuits have (inconsistently) followed the Zippo test to some extent.

6

The plaintiffs in *Bristol-Meyers Squibb* tried a similar tack. They argued that because Bristol-Meyers Squibb ("BMS") contracted with a California company (McKesson) to distribute pills across the country, including California, California could assume jurisdiction over those plaintiffs' products-liability claims, which arose out of the plaintiffs' out-of-state ingestion of such pills. 582 U.S. at 268. Incidentally, the out-of-state plaintiffs also showed that BMS employed hundreds of California residents (including 250 sales representatives), sold more than 180 million pills in California alone, reaped more than $900 million from in-state sales, and was already defending against other products-liability lawsuits in California resulting from administration of those same pills. *Id.* at 258–59. Despite *all* that, however, the Court held that those out-of-state plaintiffs could not maintain their suit in California. *Id.* at 264–69. As to the McKesson contract specifically, the Court held that contract didn't matter to the jurisdictional calculous because (a) "a defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction," and (b) the plaintiffs had suggested no reason McKesson's conduct in California should count against BMS (e.g., "that BMS was derivatively liable for McKesson's conduct"). *Id.* at 268 (citing *Walden*, 571 U.S. at 286). The same is true here.

Despite what Lilly argues, under *Bristol-Meyers*, Strive's relationship with third-party medical providers, whatever its nature, does not give rise to specific jurisdiction in Delaware, and even if those providers prescribe compounded tirzepatide to Delaware residents. And that conclusion is even more warranted here because, unlike BMS, Strive does not maintain contracts with any providers or companies in the forum state. D.I. 9 ¶ 12. Indeed, if anything, these facts cut sharply against Lilly. As Lilly concedes in its complaint (*e.g.*, D.I. 1 at 3–4), Delaware residents obtain compounded tirzepatide from Strive based on instructions from their medical provider—who may not even be in Delaware (D.I. 9 ¶¶ 22–24). These facts, coupled with Strive's unrebutted showing that it does not aim its online materials at

7

Delaware, further expose how weak a connection exists among Strive, Delaware, and Lilly's claims and thus why jurisdiction is lacking. *See Hasson*, 114 F.4th at 193–94.

## II. Lilly's Position Ignores the "Real Limits" that Related-To Jurisdiction Is Supposed to Impose.

That Lilly's position should be rejected as inconsistent with precedent is only further confirmed when considering its broad implications. To start, outside the context of the *Calder* effects test Lilly abandoned in its opposition brief, it would be anomalous to conclude as Lilly urges that Delaware may assert specific jurisdiction over Strive and its relative few contacts with Delaware when defendants with contacts of far greater "intensity" have been dismissed. *Hasson*, 114 F.4th at 193. California lacked jurisdiction over a global pharmaceutical company in *Bristol-Meyers*, despite BMS's selling and allegedly mislabeling nearly 200 million injury-causing pills into the forum (and reaping nearly $1 billion in revenue there). 582 U.S. at 264–68. *Hasson* held that Pennsylvania lacked personal jurisdiction over a national pizza chain in *Hasson* who not only operated 85 restaurants in the forum and targeted forum residents with television advertisements but also allegedly installed the software giving rise to the plaintiff's claims on the plaintiff's computer while the plaintiff resided in the forum state. 114 F.4th at 194–95. And Indiana lacked jurisdiction in *Advanced Tactical* over the manufacturer of projectile irritants who allegedly infringed the plaintiff's trademark on an "interactive website"—but not specifically in the forum state—and then sent allegedly misleading emails and hundreds of the projectiles to forum residents (among still other prominent examples like *Fidrych*) but without any indication that any residents saw these materials before making their purchases. 751 F.3d at 801–02. Each decision highlights the "real limits" purposeful availment is supposed to impose, *Hasson*, 114 F.4th at 194, but that would be lost if Lilly prevails here.

The erosion of such limits threatens more than just specific jurisdiction.

8

"Exercising jurisdiction over [Strive] would collapse the distinction between specific and general jurisdiction." *Johnson*, 21 F.4th at 323. And courts must maintain "general and specific jurisdiction [in] their separate spheres, [so that] potential defendants can anticipate and control their jurisdictional exposure." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 321 (3d Cir. 2007).

More important still, Lilly's broad view of personal jurisdiction threatens interstate federalism—an interest that "carries enormous weight." *Johnson*, 21 F.4th at 323. "When one state tries a suit, it 'may prevent sister States from exercising their like authority,' even when those states have a greater interest in the dispute." *Id.* (quoting *Ford Motor*, 592 U.S. at 360). Specific jurisdiction thus ensures that States that are more affected by a controversy are not impinged by States with lesser interests. *Ford Motor*, 592 U.S. at 360. And adopting Lilly's view here would impinge the interests and sovereignty of the State with the greatest interest in this dispute—Arizona—which is another reason to reject that view.

### III.   Delaware's Long-Arm Statute Offers Lilly No Quarter.

Having abandoned § 3104(c)(3) as a basis for long-arm jurisdiction, this Court's cases and the record make short work of Lilly's two remaining arguments under the long-arm statute. Because § 3104(c)(1) applies only if the plaintiff's claim "has its origin in the asserted [Delaware] transaction," *Intel Corp. v. Silicon Storage Tech., Inc.*, 20 F. Supp. 2d 690, 695 (D. Del. 1998), and because none of Lilly's claims have their origin in Strive's product sales or other contacts (e.g., its pharmacy license), that section cannot justify long-arm jurisdiction here. *Id.* And although that leaves § 3104(c)(2) as a basis for long-arm jurisdiction ("Contracts to supply service or things in this State"), that argument also fails and for similar reasons: none of Lilly's claims have their origin in Strive's mere product sales—the only contract Lilly identifies within the forum  that might qualify (D.I. 12 at 18). *See Katz v. Apuzzo,* 2019 WL 3219513, at *4 (D. Del. July 17, 2019); *see also Parker v. Learn Skills Corp.*, 530 F.

9

Supp. 2d 661, 672 (D. Del. 2008) (holding that another party's contracts with forum residents cannot justify long-arm jurisdiction under § 3104(c)(2)). The Court can therefore skip the entire due process analysis and dismiss (or transfer) the case for want of long-arm jurisdiction because there are no facts to justify such jurisdiction.

### IV. The Court Should Deny Lilly's Perfunctory Request for Jurisdictional Discovery.

Lilly's belt-and-suspenders request for jurisdictional discovery at the conclusion of its opposition brief should be denied. Jurisdictional discovery should not be permitted when, as here, "there is no reasonable basis to believe that discovery would disclose facts to support the exercise of personal jurisdiction over [the defendant]." *Rhodes v. Azeff*, No. 22-cv-101, 2025 WL 327297, at *5 (W.D. Pa. Jan. 29, 2025). And here, not only does Lilly disclaim the need for discovery, Lilly provides no reasonable basis for believing that discovery would yield any facts that might establish specific jurisdiction in Delaware. D.I. 12 at 20. Jurisdictional discovery is therefore unwarranted. *See, e.g., inno360, Inc. v. Zakta*, LLC, 50 F. Supp. 3d 587, 596–97 (D. Del. 2014) (denying jurisdictional discovery where such discovery would show merely that "Delaware residents could, along with the rest of the internet-using world, access defendant's website"); *Registered Agents, Ltd. v. Registered Agent, Inc.*, 880 F. Supp. 2d 541, 548 (D. Del. 2012) (denying the plaintiff's request to conduct jurisdictional discovery because the facts plaintiff intended to investigate would not give rise to specific jurisdiction, such as additional facts about defendant's nationally accessible website and minimal contacts with a Delaware client).

### CONCLUSION

For the foregoing reasons, Strive's Rule 12(b)(2) motion should be granted and the Court should dismiss or transfer this action to Arizona because Delaware lacks personal jurisdiction under the long-arm statute and as a matter of due process.

/s/ *Jeremy D. Anderson*
Jeremy D. Anderson (#4515)
BAKER & HOSTETLER LLP
1201 N. Market Street, Suite 1407
Wilmington, DE 19801
jdanderson@bakerlaw.com
T: (302) 407-4224

**ATTORNEYS FOR DEFENDANT STRIVE PHARMACY LLC D/B/A STRIVE COMPOUNDING PHARMACY**

Dated: July 15, 2025

11