IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ELI LILLY & Co.,

   *Plaintiffs,*

  v.

STRIVE PHARMACY LLC, d/b/a
STRIVE COMPOUNDING
PHARMACY

   *Defendant.*

No. 1:25-cv-00401-SB

Oderah C. Nwaeze, Angela Lam, Renee Dudek, FAEGRE DRINKER BIDDLE & REATH LLP, Wilmington, Delaware.

*Counsel for Plaintiffs.*

Jeremy Douglas Anderson, BAKER & HOSTETLER LLP, Wilmington, Delaware.

*Counsel for Defendants.*

### MEMORANDUM OPINION

October 8, 2025

BIBAS, *Circuit Judge*, sitting by designation.

 Our legal system rewards innovative drug development, not innovative jurisdictional theories. Eli Lilly's complaint has both. It sued Strive, another pharmaceutical company, in Delaware for false and deceptive online advertising. But it does not connect Strive's online ads to Delaware. Even in our digital age, personal

jurisdiction has "real limits." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021). So I grant Strive's motion to dismiss for lack of personal jurisdiction.

### I. STRIVE TRIES TO JOIN ELI LILLY IN THE GLP-1 BOOM

The market for GLP-1 drugs is booming. Compl., D.I. 1 at 8 ¶ 28, 10 ¶ 35. These drugs target the receptors that make people hungry by simulating the body's natural GLP-1 hormone, helping them lose weight and control their blood sugar. *Id.* at 8 ¶ 28. One such drug is tirzepatide. *Id.*

Eli Lilly, a pharmaceutical giant based in Indiana, developed tirzepatide to be injected under the skin to treat chronic weight management and sleep apnea. *Id.* at 2 ¶ 7, 5 ¶ 17, 8 ¶ 28. Lilly sells it under two brands: Mounjaro and Zepbound. Developing those drugs was no small feat. Bringing the average drug to market takes more than ten years and $2.6 billion. *Id.* at 6 ¶ 21. Tirzepatide was no exception: It took nearly a decade to invent it and complete thirty-seven clinical trials for FDA approval. *Id.* at 8 ¶ 28.

With the risk of innovation come both reward and responsibility. Lilly is the only seller of FDA-approved tirzepatide, and it owns all intellectual property associated with drugs that use it. *Id.* at 9 ¶¶ 30–31. It also follows strict manufacturing and testing protocols for quality control. *Id.* at 5–6 ¶¶ 18–19. So Lilly expects a return for its troubles.

But there is a way around the maze of clinical testing and FDA approval. Compounding pharmacies combine different drugs to create bespoke concoctions. *Id.* at 9 ¶ 32. For patients with allergies or unique needs that make FDA-approved medications unsuitable, compounded drugs are a godsend. *Id.* They can also provide

a workaround to shortages of popular drugs—if the brand-name medication is expensive or in short supply, compounding pharmacies can often still sell the same molecule (here, tirzepatide) in combination with other ingredients. *Id.* at 10–11 ¶ 36 nn.17, 21. And because compounding pharmacies serve as adjuncts to local pharmacies and providers, they can ship drugs nationwide. *Id.* at 13 ¶ 38. In short, compounding pharmacies can get around intellectual-property protections, exploiting valuable gaps in the pharmaceutical market.

Strive Compounding Pharmacy fills that gap for GLP-1s. Lilly's brand-name tirzepatide drugs are hard to get. *Id.* at 10–11 ¶ 36. But Arizona-based Strive sells what it calls a "personalized" combination of tirzepatide, vitamin B12, and glycine to providers across the nation. *Id.* at 13 ¶¶ 38–39. Each ingredient has a purpose: Tirzepatide is the coveted GLP-1, B12 reduces nausea, and glycine is an amino acid that helps maintain muscle mass during rapid weight loss. *Id.* at 38 n.27.

Sales are indirect. Strive advertises on its website and social media. *Id.* at 14 ¶¶ 42–50, 65–73. It has no presence in Delaware. *Id.* at 3 ¶ 11. Nor can it sell directly to Delaware patients. *Id.* Instead, it partners with local healthcare providers who prescribe GLP-1s. *Id.* at 3 ¶¶ 11–14. Strive then ships the drugs from its central locations to providers and patients across the country. *Id.* at 3 ¶ 11, 18 ¶ 54 n.36, 19 ¶ 55. Patients can refill their prescriptions through Strive's website. *Id.* at 5 ¶ 15. Otherwise, the website and social media posts advertise across the country.

Compounded drugs have compounded risks. They are not FDA-approved. *Id.* at 9 ¶ 33. They are not subject to the same labeling, testing, or manufacturing

requirements as brand-name drugs. *Id.* This makes injuries from compounded drugs both more common and harder to track. *Id.* at 10–11 ¶ 36. These risks, plus the recent boom in demand for GLP-1s, has led governments and consumer-protection groups to warn of the dangers inherent in compounded GLP-1 drugs. *Id.* at 10–12 ¶¶ 34–37.

But Lilly's claims in this case are commercial, not clinical. Lilly alleges that Strive's marketing of "customize[d]" medications that are "specifically designed" for "one-of-a-kind needs" is false and deceptive. *Id.* at 14 ¶ 44, 16 ¶ 47, 18 ¶ 50. In fact, Lilly says, Strive sells only one form of tirzepatide—it does not tailor the drug to individuals. *Id.* at 18 ¶ 54. Next, Lilly takes issue with Strive's claims that its products are "safer and better for you" than ones from "Big Pharma." *Id.* at 26–27 ¶¶ 71–73. And Lilly claims that Strive's statements that it goes "above and beyond regulatory standards" are false. *Id.* at 29–30 ¶¶ 76–79.

Lilly sues Strive for false, misleading, and unfair marketing and trade practices under Delaware's Uniform Deceptive Trade Practices Act and the Lanham Act. *Id.* at 31 ¶¶ 84–110; 6 *Del. C.* §§ 2531 *et seq.*; 15 U.S.C. § 1125(a)(1)(B). Strive moves to dismiss the complaint for lack of personal jurisdiction or else transfer the case to Arizona. D.I. 8 at 1.

## II. THIS COURT LACKS PERSONAL JURISDICTION OVER STRIVE

Strive is an Arizona company posting statements on the internet. Compl. at 2 ¶ 8. It also sells drugs in Delaware through providers. *Id.* at 3 ¶ 11. Lilly is "clear" that it does not challenge Strive's drug sales, only its online statements. *Id.* at 29 ¶ 77. But Lilly does not connect Strive's internet marketing to Delaware. Nor does it allege with

4

reasonable particularity that it may discover requisite contacts. So Lilly must sue Strive elsewhere.

### A. Strive is not at home in Delaware

Courts must have personal jurisdiction to bind the litigants before it. Personal jurisdiction can be general, covering all claims against those at home in Delaware. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017). Or it can be specific, covering only claims that arise out of or relate to an out-of-state defendant's contacts with Delaware. *Ford Motor*, 592 U.S. at 359. Strive is not at home in Delaware, and Lilly does not argue that this court has general jurisdiction. D.I. 12 at 15 n.10. That leaves specific personal jurisdiction.

### B. Strive's online marketing does not arise out of or relate to contacts with Delaware

Specific jurisdiction must be proper under both the Delaware long-arm statute and the Due Process Clause. U.S. Const. amend. XIV, § 1; Fed. R. Civ. P. 4(k)(1)(A); *AstraZeneca AB v. Mylan Pharms., Inc.*, 72 F. Supp. 3d 549, 552 (D. Del. 2014), *aff'd sub nom., Acorda Therapeutics Inc. v. Mylan Pharms. Inc.*, 817 F.3d 755 (Fed. Cir. 2016). The inquiries collapse because Delaware courts read their long-arm statute to extend as far as federal due process allows. *See id.*; 10 *Del. C.* § 3104(c) (giving jurisdiction over causes of action "arising from" acts connected to the state). So I analyze them together, accepting Lilly's allegations as true and drawing inferences in its favor. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003).

Specific personal jurisdiction over an out-of-state company's bad acts comes in two flavors: the traditional minimum-contacts test, and the effects test. *Hasson v.*

5

*FullStory, Inc.*, 114 F.4th 181, 186 (3d Cir. 2024). The latter requires an intentional tort by an out-of-state defendant who "expressly aimed" its conduct at Delaware. *Calder v. Jones*, 465 U.S. 783, 789 (1984). But Strive's allegedly fraudulent marketing posts were not "aimed" anywhere but the World Wide Web. Compl. ¶¶ 11, 65–67, 71–73, 76–78; D.I. 10 ¶ 8 (Shurtleff Declaration). Lilly never contests that. D.I. 12 at 12–13. So the effects test is no help. *See Remick v. Manfredy*, 238 F.3d 248, 259 (3d Cir. 2001) (finding *Calder*'s effects test not satisfied when a website was "accessible worldwide" and there was no evidence that defendants "expressly aimed their allegedly tortious activity" at the forum state).

That leaves the traditional two-pronged test. Strive must "purposefully avail[] itself of the privilege of conducting activities" in Delaware, and Lilly's claims must "arise out of or relate to [Strive's] contacts with the forum." *Ford Motor*, 592 U.S. at 359. Strive is a Delaware-licensed pharmacy that sells drugs in the state, so it does purposely avail itself. Compl. at 3 ¶ 10; *see Hasson*, 114 F.4th at 193.

But Lilly falters at the second prong. Specific personal jurisdiction over Strive's marketing must be based on the "relationship" among Strive, Delaware, and the online advertisements. *Ford Motor*, 592 U.S. at 365. So Lilly must plead reasonably particular facts connecting Strive's online statements to Delaware. *Provident Nat. Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987).

Lilly does not plead a "strong relationship" among Strive, Delaware, and the online marking. *Hasson*, 114 F.4th at 186, 193 (quoting *Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021) & *Ford Motor*, 592 U.S. at 365). It never connects Strive's

6

statements on its website or in its social media posts to Delaware. To be sure, Lilly can connect Strive to Delaware in the broadest of senses. Strive partners with Delaware healthcare providers who prescribe Strive's drugs. Compl. at 3 ¶¶ 11–13. Individuals buy the drugs in the first instance from providers, not Strive. *Id.* And providers prescribe compounded drugs if there is a shortage or a clinically "significant difference" between the brand-name option and the combo drug. *Id.* at 19–21 ¶¶ 56–58. Lilly thinks the prescriptions for Strive's drugs are pretextual. *Id.* at 20–21 ¶¶ 57–58. But Strive's drugs and providers' prescription practices are not at issue; Lilly makes painfully clear that "[i]t challenges Strive's *claims* about its pharmaceutical practice, not the pharmaceutical practice itself." *Id.* at 29 ¶ 77 (emphasis added). And Lilly pleads no facts connecting Delaware and the drugs to *the online statements*.

Compare these allegations to those in *Hasson*. There, a Pennsylvanian claimed that Papa John's had unlawfully wiretapped him when he went online to papajohns.com to order pizza. 114 F.4th at 185. Papa John's operates nearly a hundred stores in Pennsylvania, lets customers order pizza from Pennsylvania stores through the website, and regularly markets in the state. *Id.* at 193. It even shelled out for a Super Bowl commercial during the Philadelphia Eagles' game. *Id.* at 194. But the offending website was available nationwide and had no "specific connection" or "strong relationship" to Pennsylvania. *Id.* at 193, 194 (internal quotations omitted). It was not enough that the website also connected users to Pennsylvania restaurants—the website was the source of the injury, and the website had no link to Pennsylvania.

Next, contrast this case with *Ford Motor*. Because Ford had relentlessly advertised its products in Montana and Minnesota, those forums had jurisdiction over injuries caused by those same products. 592 U.S. at 365. But here, Lilly alleges that lawful shipping of products without an alleged injury creates jurisdiction over online advertisements posted out-of-state, without any facts connecting the ads to Delaware. Compl. at 3 ¶ 8, 29 ¶ 77. That does not square with federalism—specific personal jurisdiction may not become "a loose and spurious form of general jurisdiction." *Bristol-Myers Squibb*, 582 U.S. at 264.

Lilly resists this conclusion two ways, but both fall short. *First*, Lilly tries to distinguish *Hasson*. There, it insists, "the *only* relevant conduct was the availability of a website," while here, the "relationship between Delaware, Strive's conduct, and Lilly's harm" is stronger. D.I. 12 at 17, 18 (emphasis in original). *Hasson*, in turn, relied on another case, *Hepp*, which dismissed a right-of-publicity suit against two websites, Reddit and Imgur, for lack of personal jurisdiction. *See id.* But this effort fails. The plaintiff in *Hasson* went to the website "to order food" from "a nearby carryout location in Pennsylvania." 114 F.4th at 188. And the offending images in *Hepp* were visible in the forum state. 14 F.4th at 207. These cases teach that allegedly tortious content on the national website of a business doing commerce in a forum is not enough targeting to support personal jurisdiction. I apply that teaching here.

*Second*, Lilly points to *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). But *Zippo* may no longer be good law; in any event, it is inapt. As a threshold matter, *Zippo* held that "knowing and repeated" dealings with non-

residents through a website gave jurisdiction over a trademark infringement suit against the website. *Id.* at 1124. But that "sliding scale" approach to specific jurisdiction was rejected by the Supreme Court. *Id.*; *Bristol-Myers Squibb*, 582 U.S. at 264. Tellingly, *Hasson* never cited *Zippo*, perhaps because it has been abrogated.

Even if *Zippo* remains an accurate application of the law, that case's facts show intentional targeting of the forum: The website at issue contracted with Pennsylvania internet access providers to sell to Pennsylvanians. *See Zippo*, 952 F. Supp. at 1121. Contrast that with *Hasson*, where large in-forum sales through the website did not create personal jurisdiction over a national website when the website was the source of the cause of action. *See* 114 F.4th at 193–94. Lilly's claims are much closer to *Hasson*'s than to *Zippo*'s—not enough to support specific jurisdiction.

In sum, a public website or social media post not targeted at a state plus commercial activity does not equal a "strong connection." *Hepp*, 14 F.4th at 208. Lilly must plead "a strong relationship" between Strive's statements and Delaware by "promotion of its website *in [Delaware]*." *Hasson*, 114 F.4th at 193–94 (emphasis in original). It has not done so.

### III. THERE IS NO NEED FOR JURISDICTIONAL DISCOVERY

Lilly asks that, even if it has not pleaded personal jurisdiction, it have a chance to conduct jurisdictional discovery. D.I. 12 at 25–26. Courts grant jurisdictional discovery if there are reasonably particular factual allegations suggesting that discovery could identify requisite contacts. *Toys "R" Us*, 318 F.3d at 456.

I decline to grant jurisdictional discovery because it would not help Lilly. Lilly has not pleaded any facts connecting the ads to the state. And the "unresolved factual

9

disputes" it identifies relate to Strive's general contacts with Delaware, which are not at issue. D.I. 12 at 26. In the same way, the screenshots from Strive's national website and social-media accounts are "insufficient to support a request for jurisdictional discovery." *inno360, Inc. v. Zakta, LLC*, 50 F. Supp. 3d 587, 597 (D. Del. 2014).

\* \* \* \* \*

Eli Lilly has not pleaded that Strive targeted Delaware with its social media posts or website. Personal jurisdiction requires evidence of a real relationship. That relationship, says Strive, is in Arizona. D.I. 8 at 5. But Lilly equivocates on whether it would support transfer there. D.I. 12 at 8, 21. Plus, Lilly may still be able to connect Strive's advertising to Delaware. So I dismiss Lilly's complaint without prejudice to let Lilly either allege more jurisdictional facts or sue Strive in Arizona.